UNITED STATES, Appellee

v

RUDOLPH C. RICHMOND, Airman Second Class,
U. S. Air Force, Appellant

11 USCMA 142, 28 CMR 366

No. 13,244

Decided January 15, 1960

██ 

*Captain Norman K. Hogue* argued the cause for Appellant, Accused. With him on the brief were *Lieutenant Colonel James L. Kilgore* and *Lieutenant Colonel Philip J. Williamson.*

*Major Simpson M. Woolf* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Francis R. Coogan* and *Major Timothy G. O'Shea.*

## Opinion of the Court

GEORGE W. LATIMER, Judge:

On November 23, 1957, the accused was convicted by general court-martial of committing forty-one separate larcenies. The specifications alleged that he, in conjunction with other named airmen, on certain dates, stole United States currency in varying amounts in the aggregate sum of $22,832. He was sentenced to be dishonorably discharged from the service, to forfeit all pay and allowances, and to be confined at hard labor for ten years. On September 17, 1958, the convening authority approved the findings but, because of errors which affected the sentence, set it aside and ordered a rehearing thereon. Such proceedings were held on September 29, 1958, and the sentence returned by the second court was identical with that adjudged on the first hearing. On October 13, 1958, the convening authority approved the sentence except that he reduced the period of confinement to eight years. In his action, he credited the accused with the time served under the original sentence. On November 6, 1958, a board of review in the office of The Judge Advocate General of the Air Force ordered a rehearing of the entire case because of erroneous instructions. At this rehearing, the accused was found guilty of thirty-eight of the offenses charged. The elimination of three offenses reduced the amount stolen to $21,376. The third

court sentenced the accused to dishonorable discharge, total forfeitures, and confinement at hard labor for five years. The convening authority approved the sentence adjudged but credited the accused with the time served under the sentences previously adjudged, and thereafter a board of review affirmed.

Trial defense counsel at both arraignments and at the rehearing on sentence moved to dismiss all specifications and the Charge on the ground that the accused had been denied his rights to a speedy trial in violation of the Sixth Amendment to the Constitution of the United States. The motions were denied. In addition, at the last rehearing he challenged the law officer for cause. In support of his challenge, he stated generally that it was based on paragraph 62*f*(13), Manual for Courts-Martial, United States, 1951, the particular grounds being that the law officer had participated and served as trial counsel in the closely related case of one Airman First Class Jarvis Chalmers and in that capacity had acquired knowledge of the facts of the present case. In stating his challenge, defense counsel emphasized he was not placing in dispute the fairness or integrity of the law officer. The officer being challenged acknowledged he had acted as trial counsel in the above-mentioned case but stated he did not

**143**

know what facts would be developed in the instant prosecution. In addition, he asserted that neither his participation in that case nor his knowledge of its facts would in any way affect his ability to give the accused a fair and impartial trial and that he had no opinion as to the guilt or innocence of the accused.

So far as we are able to glean from the record, briefs, and arguments, accused's support for his contention that the two cases are closely related must be found in the following facts. The two accused stole from the same victim, the Shaw Air Force Base finance office; the offenses were committed about the same time; the methods of operation of the two accused were similar; three witnesses, namely, the finance officer, the cashier, and the Office of Special Investigations agent had testified in the Chalmers case and would testify in the instant litigation; the law officer, while acting as trial counsel in the former case, would form an opinion as to the credibility of the three aforementioned witnesses; and one motion to dismiss was common to both cases. There is no contention made that the other accused, Chalmers, was an accomplice of this appellant or that the testimony in the Chalmers case in any way involved this accused.

We granted accused the privilege of arguing two issues and they involve his contentions that he was denied a speedy trial and that the court-martial erred when it voted not to sustain the challenge directed against the law officer. We will treat the questions in the order stated.

While the first issue involves the question of speedy trial, accused's contention will be misconceived unless we call attention to the fact that his original assignment of error complained of the long delays in every step of the proceedings and his trial date was taken to be the time of the rehearing on January 28, 1959. When the issue was first being considered, we concluded that if there was any undue delay, it occurred during the time the appeal was in appellate channels. Accordingly, in our grant we narrowed the question

144

to whether accused was denied a timely review.

In order to better understand our discussion of this issue, we set out in chronological order the salient events of this litigation:

May 14, 1957—Accused was placed in pretrial confinement.

July 9, 1957—Charges were preferred.

July 10, 1957—Charges were referred for pretrial investigation.

August 26, 1957—The investigating officer made his report.

October 25, 1957—The staff judge advocate's pretrial advice was submitted.

November 4, 1957—The charges were referred to trial by general court-martial and were subsequently served on the accused.

November 19, 1947, to November 23, 1957—Accused was arraigned, tried, convicted and sentenced before a general court-martial.

September 17, 1958—Convening authority approved the findings, but ordered a rehearing on the sentence only.

September 29, 1958—Rehearing on sentence held.

October 13, 1958—Convening authority approved.

November 6, 1958—Board of review ordered a rehearing of the entire case.

November 20, 1958—Convening authority ordered a rehearing.

January 28, 1959, to January 30, 1959—Accused was arraigned, tried, and convicted, and sentenced before a new general court-martial.

April 7, 1959—Convening authority approved the findings and sentence.

May 8, 1959—Board of review affirmed.

August 10, 1959—This Court granted review.

The above calendar of events confirms the conclusion that the steps necessary before trial and during the two appeals of this case were all taken with reasonable diligence with the possible exception of one. That delay will be considered specifically but, before taking up the facts which bear thereon, we believe it advisable to set out our views on one principle of the law. An accused is guaranteed the ▮▮▮▮▮▮▮ ▮ right to a speedy trial, but that privilege must be distinguished from his rights on appeal. In connection with the former, the accused is presumed innocent and, if the Government is unable to prove his guilt, he is entitled to his liberty at the earliest possible time. His chances to defend may depend upon the availability of witnesses and, even if they are available, their memories may be dulled by the passage of time. While dilatory tactics are usually the tools of the defense, procrastination may impair a valid defense and in that way injure an accused. In addition, the history of the law teaches us that, unless preliminary matters up to and including trial are processed with dispatch, accused persons may rot in jail without being informed of the nature of the charges or the reasons for being held. To avoid those possibilities and to escape the autocratic and tyrannical abuses which had been practiced prior to the Magna Carta, the founders of this country wrote into the Sixth Amendment to the Constitution the right to a speedy and public trial. That right has been recognized in military law (see Article 10, Uniform Code of Military Justice, 10 USC § 810), but in neither the military nor the civilian law has such a privilege on appeal been so jealously guarded.

It can be argued that some of the disadvantages we mention above may devolve upon accused persons if the appellate processes are unduly delayed, but that is a bare possibility under present-day military procedure and in a given situation, if the accused is prejudiced, relief can be granted him. Significantly, in the eight and one-half years of our existence, we have had only one instance where an accused fell in that category. In United States v Tucker, 9 USCMA 587, 26 CMR 367, we dismissed an action where there had been a delay of more than one year in forwarding accused's petition for review after he put it in military channels. However, a cursory review of that decision discloses that the accused was sentenced to a short period of confinement and there were a multitude of other errors which prejudiced the accused and made further proceedings undesirable. Furthermore, there was no explanation of the delay, and we concluded the ends of justice would best be served by dismissing the charge. This case, however, presents an entirely different picture and calls for a different result.

When an accused contends he is the victim of oppressive, vexatious, and unreasonable appellate processes, he really asserts that he should be freed because of failure on the part of the Government to prosecute timely. Granting him that extraordinary relief can only be justified in instances where there was been a flagrant disregard of his rights. Accused cites no military or state authority to support his position and we have been referred to only one case in which a Federal civilian court dismissed an indictment because of the delay incident to the trial, appeal and retrial of a defendant. In United States v Provoo, 17 FRD 183, affirmed 350 US 857, 100 L ed 761, 76 S Ct 101, a trial judge granted a motion to dismiss an indictment for failure to prosecute with diligence, but one quotation from his opinion will suffice to point out the manner in which the Government trampled on the rights of the defendant:

"While there is no statute of limitations applicable in treason cases, the other considerations cited by Judge Laws apply with added force in the case at bar. Not only was Provoo imprisoned in Japan for over seven months and released without any charge ever being placed against him, but he has been held in confinement at Walter Reed Hospital, at Fort Meade, and elsewhere ever since the time he was first interviewed by

FBI agents in the spring of 1949. He has had no opportunity to locate and interview possible witnesses, many of whom have died or been lost track of. He has been imprisoned more than five years awaiting trial and pending appeal on a capital charge, and has been subject to 'the pain and anxiety which must inevitably be suffered by a prisoner who is thus kept on a mental rack', to use the words of Mr. Justice Lamar. The effect on Provoo is shown by the report of Dr. Zinkin, quoted above, and I have found as a fact that it has seriously impaired his ability to defend himself against the charge of treason.

"The cases hold that prejudice is presumed, or necessarily follows, from long delay; *a fortiori* it follows when the defendant is imprisoned over the years before trial. But if the government's contention is correct and prejudice in fact must be proved, I find as a fact that such prejudice has been shown.

"I conclude that Provoo cannot have a fair trial at this late date, that he has been denied the right of speedy trial within the meaning of the Sixth Amendment, and that there have been unnecessary delays in indicting him and bringing him to trial. Further prosecution of the indictment would violate the fundamental principles of justice and fairness which we must apply even in the case of those charged with the most heinous offenses." [17 FRD at page 203.]

In addition to the oppressive measures and unnecessary delays mentioned above, the record further shows that during the period of that criminal litigation, the defendant on numerous occasions instituted proceedings aimed toward requiring a hearing on the merits, a factor not present in the case at bar.

A case somewhat similar to *Provoo*, but not involving an appeal, is United States v McWilliams, 163 F2d 695 (CA DC Cir) (1947). There the Court of Appeals for the District of Columbia was required to pass on the validity of

an order of Judge Laws dismissing an indictment. In that case, the defendants were indicted on January 3, 1944. The trial commenced on April 17, 1944, but it ended in a mistrial some eight months later because of the death of the trial judge. Thereafter, on several occasions the defendants moved to set the case for trial, but nothing was done until Judge Laws was assigned to the case in early 1946. Several hearings were held on motions to dismiss, and on three occasions the Government was given extensions to gather evidence. Late in 1946, the trial judge concluded it was his duty to dismiss the indictment and he so ordered. The Government appealed and a majority of the appellate court panel quoted with approval this language from the trial judge's decision:

" 'Usually the Court will permit the prosecutor to decide whether he will bring a case to trial. But where it appears, as here, there is serious doubt as to the success of the case, and that the defendants, because of long delays granted over their objections, cannot obtain a fair trial, the Court should exercise its discretion to deny prosecution. It would be both unjust and un-American to do otherwise.

" 'The defendants have been before the Court upon these charges for nearly four and one-half years. All of them were brought here from other parts of the country to stand trial. Because of the impoverished stake of eighteen of the defendants, they were represented by counsel not of their own choice, but assigned by the Court to serve without compensation. As in all long-delayed cases, the witnesses now are scattered; some are not accessible, more particularly to the defendants who are without funds; the memories of witnesses as to events occurring many years ago are not clear. It is for these reasons among others that the Constitution of the United States requires a speedy trial and that the Congress of the United States has imposed Statute of Limitations to prevent long-delayed prosecutions. I do not see how these

defendants now can possibly obtain fair trials.

" 'Under the circumstances, to permit another trial, which conceivably would last more than a year, with new prosecutors and newly appointed counsel for defendants, with the eventual outcome in serious doubt, as Mr. Rogge [Government counsel] has stated to the Court on three occasions, would be a travesty on justice. I have no doubt the cases should be dismissed and an order to that effect will be entered as to all defendants.' "

We can hardly place the case at bar in a class with the two previously quoted. Here, the appeal ▌ after two rehearings reaches this Court approximately two years after the last offense was committed. The number of trial and appellate incidents in the record shows a purpose to prosecute, not a desire to abandon the prosecution. The illegal scheme employed by accused was sufficiently complex and of such magnitude that the investigation involved at least thirty-eight people, of which number some eighteen were tried by general courts-martial. As shown by the chronology of events set forth earlier, a rehearing on sentence was ordered by the convening authority. After that action had been effected, a board of review directed a rehearing of the entire case. The last order was distinctly beneficial to the accused as on the rehearing the sentence was reduced from eight to five years confinement, and in each successive step which has involved the re-imposition of the sentence, the accused has been credited with the time served and no doubt he was further benefited by the fact that forfeitures were not imposed against his pay and allowances until the action of the last convening authority which was on the 7th day of April 1959.

The only action which we find was not expeditiously taken was the first affirmance by the convening authority of the findings of the original court-martial. As previously indicated, that reviewing officer gave the accused a second chance to better his sentence, and so obviously the delay was not used to oppress or prejudice the accused. No doubt ten months is an unusual period of time for a case to be processed by a convening authority, but accused never requested that any action be taken and the Government made a reasonable showing for the delay. While we believe some criticism can be directed to the officer for failing to act sooner, in the absence of any assertion that accused's defense on the rehearing was impaired or hampered, or that he was otherwise prejudiced, we find no reason to dismiss an otherwise valid conviction.

By way of explanation for the procrastination, the Government shows that the prosecution arose out of a major financial scandal in which the accused was a principal actor. A number of persons were involved, and eighteen general court-martial trials had to be conducted within the one command. The accused was tried last, and consequently his record was transcribed last. Each record had to be reviewed carefully and complete post-trial interviews conducted. The record in accused's case was voluminous, and many questions, both legal and factual, confronted the staff judge advocate and the convening authority. The same can be said of the other cases which had to be considered by the same convening authority. The accused had received a sentence of eight years confinement and speed, after conviction and that period of incarceration, was not all-important. Apparently accused was content to let the time run, and no doubt he was gratified with the ruling when made, as the relief granted was beneficial to him in that he was given a rehearing on the sentence. Moreover, when the convening authority affirmed the second sentence, he gave the accused credit for that portion of his sentence accused had satisfied. This consideration set the pattern for all subsequent action, and so the ten months delay did not injure the accused or harm his cause. Summed up, whether we consider each step in these entire proceedings separately or blend them together for one single purpose and appraise them as an indivisi-

ble whole, we find neither failure to prosecute nor prejudice to the accused. Accordingly, we conclude that the first assignment of error is without merit.

The second issue must likewise be resolved against the accused. There is no statutory disqualifica- ██ tion which prohibited this law officer from serving. On the contrary, it would appear that Article 26 of the Code, 10 USC § 826, expressly authorized his designation, for it only proscribes his appointment if he has acted as counsel in the same case. By no stretch of the imagination can this be considered the same case as United States v Chalmers. But we must go one step further and ascertain whether paragraph 62*f* (13) of the Manual, *supra*, disqualified him from serving. Insofar as relevant to the question before us, that paragraph provides:

"Among the grounds of challenges for cause against members of special and general courts-martial and (unless otherwise indicated by the context) the law officer of a general court-martial are the following:

. . . . .

"(13) Any other facts indicating that he should not sit as a member or law officer in the interest of having the trial and subsequent proceedings free from substantial doubt as to legality, fairness, and impartiality. Examples of other facts constituting grounds for challenge are: . . . that he participated in the trial of a closely related case; . . ."

It must be noted that the Manual provision in referring to closely related cases is merely illustrating situations which might cast doubt on the legality, fairness, and impartiality of the trial, which in the final analysis is the touchstone to be used under the disqualifying test of the quoted subparagraph. In that regard, trial defense counsel forthrightly and fairly stated, "In making this challenge I, of course, wish to emphasize that the defense in no way questions the fairness or integrity of the law officer," and appellate defense counsel in their brief on appeal do not point out any comments, ruling, or ac-

tions which bespeak to the contrary. Their complaint seems to be simply that harm to the accused is unimportant, for all they need assert is that the proceedings give an appearance of evil. That theory is too general to be seriously considered in the backdrop of the facts shown in this record.

If there was a factual dispute about disqualification raised at the time of the challenge, the accused is foreclosed from obtaining a reversal because of this asserted error, for his challenge was submitted to the court-martial for decision and it ruled against him. Clearly there are facts found in the record which support that ruling. However, we believe that as a matter of law there was no disqualification. The record shows that this accused and Chalmers were neither conspirators, accomplices, nor joint offenders. While they both stole from the same finance office and their method of operation was similar, there was no connection or relationship between their illegal schemes. Chalmers could have been innocent and the accused guilty, or vice versa. If the cases were closely related, it would only be because three witnesses were common to both actions and one motion was similar. When the identity and assignments of the witnesses are considered, it is apparent that they were required to testify in all offenses involving the theft of monies from the finance office on that base at that time. That would mean that if this law officer was disqualified legally to hear this case, eighteen law officers would have had to be transported to the base to hear the cases arising out of this raid on the public treasury.

The Manual provision is open to interpretation, and we are not disposed to construe it in such a manner as to be contrary to logic and civilian precedent. No civilian judge would be disqualified under similar facts and circumstances, and we see no good reason to consider a law officer more subject to removal. Moreover, a disqualification on the facts shown here would undermine the attempt of the Army to qualify and have senior officers operate as law officers on a circuit basis. We believe the utilization of seasoned of-

148

ficers in this manner is a good program which in the long run will benefit military justice, but it would be seriously handicapped if we were to extend disqualification to cases of this sort. Even at the sake of being repetitious, it is worth mentioning again that Congress only went so far as to disqualify a law officer when he had prior participation in the same case, and the Manual rule is limited to those situations where acting in the closely related case would raise substantial doubts as to the legality, fairness, and impartiality of the trial proceedings. We propose to go no further than the Manual requirements and when a showing to that effect is made, a challenge should be sustained. But when, as here, there is no evidence remotely suggesting that condition to exist, there is, as a matter of law, no disqualification.

We have not overlooked appellate defense counsel's contention that a motion to dismiss for failure to afford the accused a speedy trial was made in both cases and that the law officer in this action opposed the motion in his then capacity as trial counsel in the *Chalmers* case. Conceding that to be the situation, it is uninfluential in this setting, for the facts supporting each motion in the two cases were entirely different. A ruling on one state of facts does not presuppose the same ruling on different evidence. But, even assuming a factual similarity, the ruling made by the law officer in the instant case was correct, and advocating a proper principle as a prosecutor in one case does not disqualify the advocate from later considering it as a judge in a different action.

For all of the foregoing reasons, we affirm the decision of the board of review.

Chief Judge QUINN concurs.

Judge FERGUSON concurs in the result.