UNITED STATES, Appellant

v

JOHN TAVOLILLA, Private, U. S. Army, Appellee

17 USCMA 395, 38 CMR 193

No. 20,692

February 16, 1968

*Captain Robert T. Mitchell, Jr.,* argued the cause for Appellant, United States. With him on the brief were *Lieutenant Colonel David Rarick* and *Major John F. Webb, Jr.*

*Captain John F. Morrow* argued the cause for Appellee, Accused. With him on the brief were *Colonel Daniel T. Ghent* and *Major David J. Passamaneck.*

### Opinion of the Court

QUINN, Chief Judge:

A divided board of review set aside the accused's conviction for wrongful appropriation of an automobile and breach of restriction, in violation of Articles 121 and 134, Uniform Code of Military Justice, 10 USC §§ 921 and 934, respectively, on the ground he was denied assistance of counsel. Pursuant to Article 67(b)(2), Code, supra, 10 USC § 867, the Judge Advocate General of the Army certified the following question for this Court's consideration:

> Was the board of review correct in setting aside the findings of guilty and the sentence?

The accused was apprehended in Columbus, Georgia, while driving a car he had taken without permission from a parking lot at Fort Benning. An Article 32 investigation was held into the circumstances of this offense and two others. At the investigation, the accused was represented by Captain Allan R. Koritzinsky, a Judge Advocate General's Corps officer. As a result of the investigation, and after review by the staff judge advocate, one of the charges was dropped. On March 16, the remaining charges were referred to trial before a general court-martial, appointed by Court-Martial Appointing Order Number 3, United States Army Infantry Center, Fort Benning, Georgia. On March 22, all unarraigned cases before this court, including the accused's, were transferred to the court-martial convened by Court-Martial Appointing Order Number 5. Except for the addition of Captain George I. Vogel, II, both orders appointed the same counsel for the accused. The appointments are as follows:

Captain Allan R. Koritzinsky, Defense Counsel

Captain John P. Rawlings, Assistant Defense Counsel

Captain John J. Lee, Assistant Defense Counsel

Captain George I. Vogel, II, Assistant Defense Counsel

According to the allied papers, only Captain Koritzinsky acted for the accused previous to trial. Besides representing him at the Article 32 investigation, he had requested psychiatric evaluation of the accused because he appeared to be "in a continuous state of excitement" and not to fully understand "the seriousness of what is going on."[1] Captain Koritzinsky also represented the accused in effecting a pretrial agreement as to the accused's plea; this agreement was approved by the convening authority on March 22.

When the case came on for trial on March 28, Captain Koritzinsky and Captain Vogel appeared for the accused. Captain Vogel announced that the accused "expressly consents to the absence of assistant defense counsel John P. Rawlings and John L. Lee." Neither Captain Koritzinsky nor the accused made objection to the announcement. Later, however, during an out-of-court hearing as to the accused's understanding of the meaning and effect of his proposed plea of guilty, the accused made certain statements which led the law officer to inquire into his understanding of his right to counsel. The pertinent part of the inquiry is as follows:

"LO: You know you can have Captain Rawlings and Captain Lee here also if you want them. Do you want them here?

"ACCUSED: Yes, sir.

"LO: You do want them here?

"ACCUSED: Yes, sir.

"LO: We will recess then until we can get them.

(The out-of-court hearing recessed at 1525 hours and reconvened at 1530 hours.)

"LO: This out-of-court hearing will come to order. All parties who were present when we closed are again present. Do you want to say something, Captain Koritzinsky?

"DC: Yes, sir. I have discussed this matter with the accused, this matter of counsel with the accused and I have explained to him that the order in question is a blanket order and we place on that order the names of all defense counsel who will at some time in the future try cases before this court, and I have explained to Private Tavolilla that it didn't mean that all of the defense counsel on the order were prepared to defend him, two counsel, Captain Vogel and myself, are prepared to defend him, the other two counsel know nothing about the case. He was under a misunderstanding—he thought that Captain Rawlings and Captain Lee were prepared to defend him but just couldn't make it and therefore he felt they should come.

"LO: I am prepared to give him enough time for them to become prepared to defend him because this case was referred to trial with four defense counsel, he is entitled to four defense counsel, if he wants them, he can have them.

"DC: He is shaking his head; I assume that means he does not want them.

"LO: We don't record shakes of head. Private Tavolilla, you are entitled to the four defense counsel named on the order; you told me you wanted the two that are not present in addition to the two that are present.

"ACCUSED: Sir, I thought they would know about my case.

"LO: I don't know whether they know anything about your case or not.

"ACCUSED: Captain Koritzinsky said, explained they wouldn't know nothing of the case.

---

[1] The request was granted, and the accused was examined at the Mental Hygiene Consultation Division, Fort Benning, Georgia. It was determined that he suffered from "[i]mmature personality," but exhibited "no evidence of paronoid [sic] ideation," and possessed mental capacity to commit the offenses charged and to understand and participate intelligently in his defense.

"LO: Do you want to recess so they can find out something about your case so you can be defended by them?

"ACCUSED: No, sir.

"LO: You are sure?

"ACCUSED: Yes, sir.

"LO: You are absolutely positive?

"ACCUSED: Yes, sir.

"LO: You are perfectly satisfied with Captain Koritzinsky and Captain Vogel to defend you?

"ACCUSED: Yes, sir.

"LO: You are specifically telling me you don't want the other two present, Captains Rawlings and Lee?

"ACCUSED: No, sir.

"LO: You don't want them present?

"ACCUSED: No, sir.

"LO: You are sure of that?

"ACCUSED: No, sir.

"LO: You want any time to think it over?

"ACCUSED: No, sir.

"LO: You are positive?

"ACCUSED: Yes, sir.

"LO: No question in your mind?

"ACCUSED: No question in my mind.

"LO: All right, we'll proceed then."

An accused in a criminal proceeding is guaranteed the right to assistance of counsel. In the civilian community, except in capital cases, a single lawyer is normally appointed to represent an accused unable to pay for counsel of his own choice. See 18 USC §§ 3005, 3006A; Crum v Hunter, 151 F2d 359 (CA10th Cir) (1945), certiorari denied, 328 US 850, 90 L ed 1623, 66 S Ct 1117 (1946). Military law requires the appointment of at least one lawyer for the accused in a general court-martial case, regardless of his pecuniary ability to pay for counsel of his own choice. Other lawyers may be appointed. The initial determination as to whether more than one lawyer should be appointed for the accused rests in the discretion of the convening authority. These requirements are spelled out in Article 27, Code, supra, 10 USC § 827, which provides that for each general and special court-martial the convening authority shall "detail trial counsel and defense counsel, and such assistants as he considers appropriate." The Government contends that this authority to appoint assistant defense counsel carries with it the power to determine whether such counsel may be present or absent at the trial of a particular case. Since the record of trial indicates the absent assistant defense counsel were excused by verbal order by the convening authority, the Government argues no right of counsel is involved, and the board of review was wrong in holding that it was. It relies upon United States v Tibbs, 15 USCMA 350, 356, 35 CMR 322, and paragraph 37c(2) of the Manual for Courts-Martial, United States, 1951.

Neither of the authorities cited by the Government supports its contention. As appears from the excerpt from our opinion in *Tibbs*, set out in the footnote,[2] that case dealt with the substitution of one lawyer for another, not with excusing an appointed counsel from the performance of a specific duty inherent in his responsibility to defend the accused. Paragraph 37 of the Manual, supra, also deals with relieving counsel completely from a particular case, not with excusing him from carrying out a specific duty in a con-

<hr>

[2] ". . . Also, a change in the court membership, or a substitution of counsel or law officer, could affect the trial date. To meet the special needs of the military services, such changes of personnel may be effected before arraignment 'within the discretion of the convening authority.'" [United States v Tibbs, 15 USCMA 350, 356, 35 CMR 322.]

[3] "37. CHANGES IN PERSONNEL.—*a. General.*—Subject to the exceptions stated below (37*b*), it is within the discretion of the convening

tinuing attorney-client relationship.[3] Circumstances may make it necessary for the convening authority to replace one defense counsel by another, or to relieve one of several counsel appointed for the accused. Manual, supra, paragraph 37; United States v Massey, 14 USCMA 486, 34 CMR 266; United States v Tellier, 13 USCMA 323, 32 CMR 323. Cf. United States v Boysen, 11 USCMA 331, 29 CMR 147. However, the convening authority's right to change or relieve counsel under appropriate circumstances does not empower him to control counsel in the exercise of his responsibilities. A convening authority, for example, cannot tell defense counsel what issues he may or may not raise in defense of the accused. See United States v Kitchens, 12 USCMA 589, 592, 31 CMR 175. Similarly, he cannot authorize defense counsel to represent the accused only to a specified point in the proceedings. We conclude, therefore, that the appointed assistant defense counsel were an integral part of the defense team, and could not be authorized by the convening authority to be absent from the trial.

We turn now to the other explanation for the absence of the two assistant defense counsel, ▌ namely, that they were excused with the express consent of the accused. In civilian practice, assistant counsel is subject to the direction and control of chief counsel. The military practice is the same. Article 27, Code, supra, clearly contemplates the primacy of authority and responsibility of defense counsel in re-lation to assistant defense counsel. Explicit recognition of his superior position appears in the Manual's discussion of the Article. In material part, paragraph 47 provides:

"ASSISTANT DEFENSE COUNSEL.—Unless he is disqualified by reason of prior participation in the case (6a; Art. 27a), any person named in the order as an assistant defense counsel of a general or special court-martial may, under the direction of the defense counsel or when he is qualified to be the defense counsel as required by Article 27, perform any duty imposed by law, regulations, or custom of the service upon counsel for the accused. See Article 38e. Unless in charge of the defense, he will perform those duties in connection with the trial that the counsel in charge of the defense may designate. . . . See 6a and d for rules as to when the conduct of the defense devolves upon an assistant defense counsel." [Manual for Courts-Martial, supra, at page 67.]

Procedural decisions as to the conduct of the defense can properly be made by the defense counsel, without discussion of the matter with the accused and procurement of his express consent. United States v Cambridge, 3 USCMA 377, 12 CMR 133. See also United States v Goard, 13 USCMA 588, 33 CMR 120. Consequently, defense counsel could define the particular duties of each assistant defense counsel without first consulting with the accused. His determination that some

authority to make changes in the composition of courts-martial appointed by him. For instance, he may appoint new members to a court in lieu of, or in addition to, the members of the original court; or he may appoint a new law officer, trial counsel, or defense counsel in lieu of the personnel designated to perform those respective duties by the original appointing order.

. . . . .

"c. **Manner in which effected.**—(1) *Formal Changes.*—Permanent changes in the composition of a court-martial, such as changes which involve the appointment of new personnel to a court or the relief of a member, are usually accomplished by promulgation of formal written orders amending the original appointing order. . . .

"(2) *Informal changes.*—If the convening authority excuses a member or counsel from attendance at future sessions of a general or special court-martial in a particular case or series of cases, but does not desire to relieve him permanently as a member or counsel, he may take such action by oral order, despatch, or signal and need not confirm the action by a written order." [Manual for Courts-Martial, United States, 1951, at pages 52, 53.]

of the appointed assistants do nothing necessarily results, as the board of review held, in reducing the number of lawyers rendering active assistance to the accused, but manifestly does not, as the board of review concluded, deprive him of counsel. He still has the full and unqualified assistance of the chief counsel and the remaining assistants. In effect, the situation presented by the appointments here is comparable to one in which the defense of an indigent devolves upon the public defender. He can, and does, designate which assistants available to him shall actively represent the accused. A decision allocating specific responsibility to designated members of the defense team does not, in our opinion, deprive the accused of the assistance of counsel, either from the standpoint of the Sixth Amendment to the Constitution of the United States or within the meaning of Article 27.

Since the Manual for Courts-Martial recognizes the authority of defense counsel to determine the extent of participation of assistant defense counsel, both before and at trial, it is logically arguable that he alone should determine whether the presence of assistant counsel at trial is or is not necessary. However, at least impliedly, the Manual obligates assistant defense counsel to attend the trial, unless excused by the accused. Paragraph 46c provides as follows:

"**Absence.**—For a proper reason (e. g., preparation of another case) the president may, with the express consent of the accused, excuse from attendance during a trial such of the personnel of the defense as will not be required." [Manual for Courts-Martial, supra, at page 66.]

Fairly read, the transcript of the out-of-court hearing demonstrates the law officer fully informed ▌ the accused of his right to the presence of Captain Rawlings and Captain Lee for the trial. The record further demonstrates the accused understood that if he wanted

them to be present for the trial, the trial would be continued until they familiarized themselves with the case and were available. The transcript leaves no doubt whatever the accused expressly consented that these assistant defense counsel be excused from attending the trial. Equally manifest is that there was a "proper reason" to excuse them. According to defense counsel they did not know anything about the accused's case; and clearly they were not needed for the trial. The accused had conferred "enough times" with Captain Koritzinsky to prepare for trial. Less than a week after the case was referred to trial, he submitted his offer to plead guilty.[4] In every respect but one, therefore, the requirements of paragraph 46c for the excuse of the assistant defense counsel were fully met. The only difference between the procedure set out in the paragraph and that followed in this case was that the inquiry into the accused's consent to the absence of assistant defense counsel was conducted by the law officer, rather than the president of the court-martial.

Except as an uncritical carry-over of the practice before the Uniform Code of Military Justice, when there was no law officer in a general court-martial, we perceive no cogent reason for the president to make the inquiry into the accused's consent. See Legal and Legislative Basis, Manual for Courts-Martial, United States, 1951, page 28; Manual for Courts-Martial, U. S. Army, 1949, paragraph 43. The Trial Guide in the current Manual indicates that the law officer, not the president, rules on questions arising in connection with the accused's representation by counsel. Manual for Courts-Martial, United States, 1951, Appendix 8a, at pages 503, 504. Be that as it may, ascertainment of the accused's consent to the absence of one or more of the several counsel representing him is an interlocutory matter. As such, the law officer has exclusive authority to deal with it. Article 51(b), Code, supra, 10 USC § 851. See United

---

[4] We note that the sentence imposed by the court-martial was similar to that which the accused indicated in his pretrial offer was acceptable to him.

States v Tellier, supra. We conclude, therefore, that the law officer acted properly in advising the accused as to his rights in regard to the presence at trial of appointed assistant defense counsel. We further conclude that the accused expressly consented to the absence of Captain Rawlings and Captain Lee. The accused, therefore, was not improperly deprived of the assistance of any of the counsel appointed for him.

We answer the certified question in the negative, and reverse the decision of the board of review. The record of trial is returned to the Judge Advocate General of the Army for resubmission to the board of review for further proceedings consistent with this opinion.

Judges FERGUSON and KILDAY concur.