UNITED STATES, Appellee

v

HAROLD G. COLLIER, Private,
U. S. Army, Appellant

20 USCMA 261, 43 CMR 101

*Captain Gary L. Hultquist* argued the cause for Appellant, Accused. With him on the brief were *Colonel Daniel T. Ghent* and *Captain Thomas R. Maher.*

*Captain John F. Cooney, Jr.,* argued the cause for Appellee, United States. With him on the brief were *Colonel David T. Bryant, Major Edwin P. Wasinger, Captain Benjamin G. Porter,* and *Captain William R. Steinmetz.*

## Opinion of the Court

QUINN, Chief Judge:

A general court-martial convened at Chu Lai, Republic of Vietnam, convicted the accused of willful disobedience, on December 5, 1968, of the lawful command of a superior officer (Charge I and its specification), and assault with intent to murder "divers personnel," on December 10, 1968, by firing an M–16 rifle into an officers' club (Charge II, specification 2), in violation of Articles 90 and 134, Uniform Code of Military Justice, 10 USC § 890 and 934, respectively.

During the sentence procedure, it appeared for the first time that the accused had, on December 10, 1968, consulted with a Judge Advocate General Corps officer in connection with Charge I. Later, he specially requested that officer as his counsel for the Article 32 investigation, but the officer was away from the area on rest and recreation leave. Thereafter, the requested officer was assigned as trial counsel of the court-martial to which the charges were referred. At trial, the accused was represented by appointed counsel, who had previously been appointed to represent him at the Article 32 investigation because of the absence of the requested officer. When these circumstances were disclosed, the law officer held an out-of-court inquiry to determine the extent of the previous relationship between the accused and trial counsel. Trial counsel noted that he did not have "the vaguest idea" of any earlier connection with the case, and if he had he "would

not walk into a courtroom and prosecute." However, after a check of his office records, he conceded that they "reflect that . . . [he] did see" the accused on December 6th and December 10th. He also admitted that, while he "usually" did not discuss the merits in a situation such as that reflected in the records of his conferences with the accused, he "might have" done so with the accused, but he just did not "recall." It was further established that the December 10th interview with the accused took place before the accused committed the assault offense.

Troubled by the lateness of the disclosure of trial counsel's previous connection with the accused, the law officer ultimately concluded that there was no alternative but to dismiss the disobedience charge because of counsel's relationship to the accused. He so informed the court members and instructed them to disregard that offense in their deliberations on the sentence for the remaining findings of guilty. The court sentenced the accused to forfeiture of pay and allowances, dishonorable discharge, and confinement at hard labor for ten years.

Certainly, the law officer acted with wisdom and legal propriety in inquiring into the circumstances of trial counsel's prior representation of the accused. Article 27(a), Code, supra, 10 USC § 827, directs that a person who has acted for the defense shall not "act later in the same case for the prosecution." See also United States v Green, 5

USCMA 610, 18 CMR 234 (1955). Article 32(b), Code, supra, 10 USC §832, guarantees the accused the right to representation during the pretrial investigation by "military counsel of his own selection if such counsel is reasonably available." The interplay of the two provisions in this case is evident in the Government's argument in opposition to the petition for grant of review that "the possibility of any prejudice . . . [as a result of the disposition of the accused's request for counsel] was precluded" by the law officer's dismissal of the disobedience charge.

So far as the Article 32 is concerned, the record does not unequivocally indicate that the accused's request for counsel was actually reported to the convening authority for determination as required by paragraph 34c(2), Manual for Courts-Martial, United States, 1951. The report of the Article 32 simply notes that requested counsel "was on R & R [rest and recreation leave] during the period of request, and not available to the accused. Accused agreed to other military counsel appointed by convening authority." See United States v Cutting, 14 USCMA 347, 34 CMR 127 (1964). Government appellate counsel contend that, since the accused did not move for appropriate relief at the trial, he waived any defect in connection with his request for counsel. United States v Mitchell, 15 USCMA 516, 36 CMR 14 (1965).

The opinion in Mitchell, supra, at page 519, compared the facts in that case with those in Cutting. The comparison emphasized that the circumstances relied upon to establish waiver must convincingly demonstrate the "accused's willingness to proceed to trial with appointed counsel, rather than individual counsel." When this came to trial, the Government, by ■ its own action, had made it impossible for the accused to request the lawyer who had acted for him earlier in the proceedings, because it had appointed that lawyer as the prosecuting attorney. In our opinion, the Government's action deprived the accused of the opportunity to exercise a choice in the matter and precludes a conclusion of waiver.

As to the conflicting duties of trial counsel, the impropriety of his dual role is not lessened "by the virtual certainty that the dubious conduct was thoughtless and wholly innocent." United States v Green, supra, at page 616. Such duality of role is ordinarily so ingrained with unfairness as to require reversal without nice calculations as to its adverse consequences to the accused and the integrity of the trial. Id., at page 618. We have, however, recognized that the nature and scope of counsel's inconsistent roles may be so circumscribed as to compellingly demonstrate that neither the accused nor the judicial system has been harmed, either in substance or image. United States v McCluskey, 6 USCMA 545, 20 CMR 261 (1955); United States v Best, 6 USCMA 39, 19 CMR 165 (1955).

In McCluskey, the accused's right to occupy military housing with a woman represented to be his wife came into question. As a result, he had several conferences with a military lawyer. Not long thereafter, he was charged with a number of offenses in violation of the Uniform Code, including bigamy and two specifications of assault. The charges were referred for trial before a court-martial in which the lawyer who had previously acted for the accused was designated trial counsel. Before trial, counsel initiated correspondence and arranged for the taking of certain depositions on the question of the accused's marital status. Then he was removed as trial counsel, and another lawyer continued the prosecution. At trial, depositions resulting from the efforts of the previous trial counsel were admitted into evidence over defense objection. We held that, as the product of the antagonistic roles of counsel, the depositions should not have been admitted in evidence. However, since the record demonstrated "specific and particularized injury" affecting only the charges concerned with the accused's marital status, we determined that it was "reasonable to channel the prej-

**263**

udice . . . against only those charges." *Id.*, at page 553. No similar demonstration of particularized prejudice is apparent in this case.

Unlike trial counsel in *McCluskey*, trial counsel here did not get out of the case after limited pretrial participation. He was the Government's sole and active lawyer at trial. He may not have remembered his conferences with the accused, but he was bound by his previous representation not to be disloyal to the accused. In United States v Moore, 9 USCMA 284, 26 CMR 64 (1958), we reversed the accused's conviction because his lawyer had previously represented a material Government witness and had failed to confront that witness with impeaching matter during cross-examination. Here, an important Government witness testified as to both the disobedience charge and the assault charge. Since he was a Government witness, trial counsel was necessarily interested in establishing and preserving his credibility. On the other hand, counsel's previous position as accused's counsel would have inclined him toward diminishing the impact of the testimony as best he could. The conflict in representation is substantially similar to that in *Moore*. The "pervasive character" of the duality of trial counsel's role is thus more like that in *Green*, which required reversal, than that in *McCluskey*, where counsel's actions could reasonably be isolated and narrowly channeled. See *McCluskey*, supra, at page 553.

The decision of the United States Army Court of Military Review is reversed. The findings of guilty and the sentence are set aside. A rehearing of the assault charge[1] may be ordered. United States v McCluskey, supra.

Judge FERGUSON concurs.

DARDEN, Judge (concurring in the result):

The availability of requested individual counsel is a decision for the convening authority. That he acted in this case is not satisfactorily shown by the notation in the Article 32, Uniform Code of Military Justice, 10 USC § 832, investigation that Collier agreed to other military counsel when he was told that requested counsel was on leave.

Collier's renewal at trial of his request for counsel of his choice obviously would have been futile, as this counsel was then prosecuting the case for the Government. Under these circumstances, I would not invoke the doctrine of waiver. United States v Hartfield, 17 USCMA 269, 38 CMR 67 (1967). For these reasons, I join in setting aside the findings and sentence.

---

[1] As noted earlier in the text, the law officer dismissed the disobedience charge. No review of that ruling was ever sought.