UNITED STATES, Appellee

v

JAKE PRATER, Jr., Private First Class, U. S. Marine Corps, Appellant

20 USCMA 339, 43 CMR 179

No. 23,200

February 12, 1971

*Lieutenant Kenneth F. Ripple,* JAGC, USNR, argued the cause for Appellant, Accused.

*Lieutenant James E. Akers,* JAGC, USNR, argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Charles J. Keever,* USMC, *Commander Michael F. Fasanaro, Jr.,* JAGC, USN, and *Captain Frank J. Kaveney,* USMCR.

## Opinion

DARDEN, Judge:

A general court-martial at Da Nang, Republic of Vietnam, found the appellant guilty of attempted larceny of Government-owned beer and soft drinks, violations of a lawful general order, and resisting lawful apprehension by an armed forces policeman. On January 25, 1969, the court sentenced him to a bad-conduct discharge, confinement at hard labor for twelve months, forfeiture of $65.00 per month for twelve months, and reduction to the grade of E-1. Earlier appellate review resulted in dismissal of one specification under the charge of violating a lawful general order and reassessment of the sentence without a change in it.

One of the three issues on which this Court granted appellant's petition for review related to his understanding of his choice of counsel under Article 38 (b), Uniform Code of Military Justice, 10 USC § 838. In United States v Donohew, 18 USCMA 149, 39 CMR 149 (1969), we prescribed a prospective requirement that the military judge in-

form an accused of the several choices of counsel that Article 38 (b) provides. Before the *Donohew* decision, only the defense counsel had a responsibility for informing an accused of these choices. Our opinion in United States v Turner, 20 USCMA 167, 43 CMR 7 (1970), elaborates the principal objective of *Donohew* as being to assure that an accused knows of his rights to be represented by civilian counsel at his own expense or by military counsel other than the one then assigned to him if the other military counsel was reasonably available. The new responsibility of the military judge under *Donohew* did not end the responsibility of defense counsel under paragraph 46d of the Manual for Courts-Martial, United States, 1969, to discuss counsel choices. Without a showing that an accused did not understand the advice about other possibilities for counsel or that the accused was, in fact, denied an opportunity to select his own counsel, we have not reversed any pre-*Donohew* cases in which there was no inquiry whether the accused had been

**340**

advised of his rights under Article 38 (b), Code, supra.

The appellant in the case before us was represented by certified lawyer-counsel throughout the proceedings. Without a showing to the contrary, we assume on pre-*Donohew* cases that the defense counsel properly performed his duties. In addition, the record in this case reflects that the appellant was fully informed of his Article 38(b) rights at the pretrial investigation of charges against him. Under pre-*Donohew* standards,[1] these circumstances are enough to satisfy requirements on right-to-counsel advice that existed at the time of trial. United States v Johnson, No. 69–3473 (NCMR June 23, 1970), petition for grant of review denied, Docket No. 23,268 (September 23, 1970).

The next issue arises from the military judge's instruction in presentencing proceedings that:

". . . [P]leas of guilty are matters in mitigation which may be considered along with all the other facts and circumstances in the case. Time, effort, and expense to the government usually are saved by a plea of guilty. Such a plea may be a manifestation of repentance and a first step toward rehabilitation."

The appellant had pleaded guilty to only two specifications involving violation of a general regulation. Because he pleaded not guilty to two other charges (attempted larceny and resisting lawful apprehension) his appellate counsel contends that the instruction in question was likely to cause the court to determine that the not guilty pleas were aggravating circumstances.

A military judge must give a court-martial guidelines for its sentencing deliberations. United States v Rake, 11 USCMA 159, 28 CMR 383 (1960). These instructions must be tailored to the evidence offered by each side during extenuation and mitigation. United States v Wheeler, 17 USCMA 274, 38 CMR 72 (1967). A majority of this Court has held that where there is no evidence of good conduct, valor, or other favorable traits of an accused, the judge should not mention those qualities since reference to them would emphasize their obvious absence. United States v Tackett, 19 USCMA 85, 41 CMR 85 (1969). An instruction that a guilty plea is a matter in mitigation "is not inappropriate" (*Rake, supra,* at page 161), and such an instruction is "an important factor in determining an appropriate sentence." United States v Rake, supra, dissenting opinion, at page 161. In *Wheeler, supra,* the Court emphasized the duty of the military judge to invite the court's attention to "the plea of guilty; and other matters which the court should consider." 17 USCMA, at page 278.

Against this background it seems clear that if the instruction that a guilty plea is a mitigating circumstance had not been given, failure to do so would have been assigned as error. Our opinion is that the juxtaposition of the guilty and not guilty pleas was as likely to benefit the accused as it was to harm him. His discriminating choice of pleas served to emphasize the sincerity of his belief that he was not guilty of two of the charges; at the same time he had the benefit of an instruction that his guilty pleas should tend to mitigate the sentence. We believe the fear of appellate defense counsel that the members of the court would consider the not guilty pleas as aggravating in nature is without any foundation in reality.

The precise wording of the third issue is: "Whether appellant was denied due process of law by the unreasonable delays in this case." Aside from the prejudgment that the conclusory words "unreasonable delays" may denote, the issue needs further refinement to indicate its contemplation of a test under the standard of

1. This case was tried on January 25, 1969, before the effective date of United States v Donohew, 18 USCMA 149, 39 CMR 149 (March 7, 1969).

military, instead of Fifth Amendment, due process. Although this Court has declared that constitutional safeguards apply to military trials except insofar as they are made inapplicable expressly or by necessary implication (United States v Jacoby, 11 USCMA 428, 29 CMR 244 (1960)), the Court has not held that the due process clause of the Fifth Amendment applies *ex proprio vigore* to appellate review of military trials. Speedy trial issues have been decided on the basis of military due process. United States v Schalck, 14 USCMA 371, 34 CMR 151 (1964). In United States v Clay, 1 USCMA 74, 77, 1 CMR 74 (1951), the Court commented on military due process that: "For our purposes, and in keeping with the principles of military justice developed over the years, we do not bottom those rights and privileges on the Constitution. We base them on the laws as enacted by Congress." Congress has legislated safeguards to the right of a speedy trial (Articles 10 and 33, Uniform Code of Military Justice, 10 USC §§ 810 and 833), but there are no statutory limitations on the period of appellate review other than those imposed on this Court by Article 67 of the Code. In United States v Richmond, 11 USCMA 142, 145, 28 CMR 366 (1960), this Court commented on the differences in the timing of the trial itself and of appellate review:

". . . An accused is guaranteed the right to a speedy trial, but that privilege must be distinguished from his rights on appeal. In connection with the former, the accused is presumed innocent and, if the Government is unable to prove his guilt, he is entitled to his liberty at the earliest possible time. His chances to defend may depend upon the availability of witnesses and, even if they are available, their memories may be dulled by the passage of time. While dilatory tactics are usually the tools of the defense, procrastination may impair a valid defense and in that way injure an accused. In addition, the history of the law teaches us that, unless preliminary matters up to and including trial are processed with dispatch, accused persons may rot in jail without being informed of the nature of the charges or the reasons for being held. To avoid those possibilities and to escape the autocratic and tyrannical abuses which had been practiced prior to the Magna Carta, the founders of this country wrote into the Sixth Amendment to the Constitution the right to a speedy and public trial. That right has been recognized in military law (see Article 10, Uniform Code of Military Justice, 10 USC § 810), but in neither the military nor the civilian law has such a privilege on appeal been so jealously guarded."

The court-martial that tried the appellant pronounced sentence on January 25, 1969. Not until November 3, 1969, some nine months later, did the convening authority act on the case. The appellant was released from confinement on October 31, 1969, and has been in a status of "appellate leave" pending completion of appellate review.

The reasons for the delay were unexplained in the staff judge advocate's report. Attachments to the Government brief attribute the delay to a heavy workload in a command located in a war zone, a shortage of qualified personnel, and frequent equipment breakdowns while the record of trial was being processed. Even for those who have not personally observed the conditions under which operations are being conducted in Vietnam, no extraordinary imagination is required for an appreciation of the unusual circumstances obtaining there. Despite our disinclination to be captious, the lapse of time between the time of trial and the convening authority's action in this case seems excessive. But that the time required for this step was inordinately long does not *ipso facto* demonstrate that the appellant was prejudiced.

Since Congress created an arrangement under which an accused receives

credit against sentence to confinement for the time required by appellate review, the service of all confinement before completion of appellate review should not be conclusive in itself on the issue of prejudice. In almost all special courts-martial, the appellant has been released from what could have been a maximum of six months' confinement before he has an opportunity to petition this Court. Hence the choice of the appellant in this case to be in a status of "appellate leave" rather than discharged pending consideration of this case by the Court of Military Review and this Court does not set him apart from many other appellants.

Where error has occurred in the conduct of a court-martial proceeding, some combinations of sentences and delays can result in cases requiring relief if a review for errors of law under Article 67, Uniform Code of Military Justice, 10 USC § 867, is not to become a completely inane exercise. Unexplained appellate delays may demand a dismissal if prejudicial errors have occurred. United States v Tucker, 9 USCMA 587, 26 CMR 367 (1958); United States v Ervin, 20 USCMA 97, 42 CMR 289 (1970).

In this case the proceedings by which the conviction of this appellant came about are free of █ prejudicial error. Consequently there is no wrong to be righted and our concern about the delay in the convening authority's action is not a sufficient basis for reversal. United States v Richmond, supra.

The decision of the Court of Military Review is affirmed.

QUINN, Chief Judge (concurring in the result):

I agree generally with the disposition of the issues effected in the principal opinion, but I am constrained to dissociate myself from the implication that military due process is isolated from, independent of, and something less than, constitutional due process. As Judge Ferguson observed in United States v Tempia, 16 USCMA 629, 633, 37 CMR 249 (1967), the fact that military law has developed separately from Federal civilian law "does not mean that persons subject thereto are denied their constitutional rights." In the area of due process, military law is not only consistent with constitutional due process but provides for "something more." Quinn, "The United States Court of Military Appeals and Military Due Process," 35 St. John's Law Review 225, 232 (1961).

FERGUSON, Judge (dissenting):

I dissent.

The accused was convicted by general court-martial convened in Vietnam, on January 25, 1969, and sentenced, in addition to other penalties, to confinement at hard labor for one year. He was released from confinement on October 31, 1969. However, the convening authority did not act on the eighty-two page record of trial until November 3, 1969, three days thereafter. No explanation for the delay of more than nine months is contained in the post-trial review (cf. United States v Bennie, 10 USCMA 159, 27 CMR 233 (1959)) or in the general court-martial order publishing the convening authority's action. Nor is the fact of delay even mentioned. The convening authority simply approved the findings and sentence and designated the United States Naval Disciplinary Command, Portsmouth, New Hampshire, as the place of *temporary custody* and forwarded the record of trial to the Judge Advocate General of the Navy for review by the Court of Military Review. My brothers take the position that since the record is devoid of prejudicial error (cf. United States v Tucker, 9 USCMA 587, 26 CMR 367 (1958)), there is no wrong to be righted and the delay in the convening authority's action is not a sufficient basis for reversal. United States v Richmond, 11 USCMA 142, 28 CMR 366 (1960). I disagree.

Initially, I would reverse as I find prejudice in the fact of delay alone. In United States v Tucker, supra, where there was a delay of more than

**343**

a year between the date on which the accused, following affirmance by a board of review, put his petition for review in military channels at the United States Naval Retraining Command, Portsmouth, New Hampshire, and the date on which it was forwarded to the Judge Advocate General of the Navy, we stated at page 589:

"There may be good reason for the delay in the appellate processes, but it does not appear in the record before us. Unexplained delays of the kind presented here should not be tolerated by the services, and they will not be countenanced by this Court."

Cf. United States v Moore, 19 USCMA 274, 41 CMR 274 (1970).

Review by the convening authority is more than a mere search of the record for factual and legal errors. It is at this level that an accused has his best opportunity to be the recipient of clemency. United States v Massey, 5 USCMA 514, 18 CMR 138 (1955); United States v Rivera, 20 USCMA 6, 42 CMR 198 (1970). The possibility of such relief is negated where, as here, the sentence to confinement has already been served. Clemency in this case, at least as to sentence, would not have been unusual since the accused was only twenty years of age, had served in Vietnam for a year, and was the recipient of the purple heart, as well as those other decorations commensurate with service in a zone of combat. In addition, he was married, the father of a child, and his conduct and proficiency marks over the twenty-three month period of service were noted by the staff judge advocate as being "satisfactory." His prior record revealed only one summary court-martial and two nonjudicial punishments. Cf. United States v Rivera, supra.

I submit that the time is long past for allowing such *dilatory, unexplained* action on the part of those statutorily charged with prompt disposition of courts-martial to go unchallenged. The integrity of the court-martial process, including appellate review, is

at stake. If unexplained delays become a tolerated part of the system, if men serve all or a good part of their sentence before an appellate tribunal ever sees the case, it will become difficult to counter charges that the military justice system is incapable of protecting the rights of American citizens in uniform. The net result can only be a loss of respect for military law among Americans, in and out of uniform. Even presence of a unit in a combat zone does not give the command license to administer justice with any less vigor and attention than other commands. An American soldier serving in a combat zone is not subject to a brand of justice inferior to that administered to his stateside counterpart. Cf. United States v Nelson, 18 USCMA 177, 39 CMR 177 (1969).

In this particular case, the accused underwent trial by court-martial halfway around the world from his home, family, and civilian friends. He pleaded not guilty to charges of attempted larceny and resisting apprehension and guilty to two specifications of violation of a lawful general order by being outside a military installation after curfew and by being in an off-limits area. The order offenses were multiplicious for purposes of sentence and one was set aside and dismissed by the Court of Military Review. He persisted in his pleas throughout the proceedings and in his testimony under oath, raised legal and factual defenses to the charges to which he pleaded not guilty.

After trial, Prater, who had not been in pretrial confinement, was sent to the Naval Prison, Portsmouth, New Hampshire. I am unaware of how this was accomplished for the convening authority did not designate Portsmouth as the place of confinement until *after* the accused's release therefrom. When he left Vietnam, his case and his counsel remained behind. The record of trial was, in fact, never examined by defense counsel "due to his earlier detachment." During that period there was, essentially, no one to whom Prater could turn for legal as-

sistance concerning his appellate rights, since he was relying on counsel who did not yet even know of the case. Not until November 19, 1969, according to appellate defense counsel, nineteen days after accused's release, was new counsel assigned to protect his rights. Prater served his entire sentence to confinement without ever having word relative to his trial and his appeal. Inasmuch as the Government was in complete, unbridled control of the situation during this period, it must be held to the highest standard of care, sensitivity, and expedition. As we said in United States v Norwood, 16 USCMA 310, 311, 36 CMR 466 (1966):

> "We entertain no doubt that the defects in the proceedings were entirely inadvertent. We also do not doubt they resulted from an honest intention to do the 'right' thing. Good intentions, however, are not enough; and a negligent failure to adhere to correct practice may be so detrimental to an accused as to require reversal of an otherwise valid conviction. United States v Smith, 8 USCMA 582, 25 CMR 86 [1958]."

Contrary to my brothers' finding of "no wrong to be righted," I find in this record several matters which cause me concern.

The record of the Article 32 investigation reflects that the accused requested that he be defended by Captain Donald W. Griffis, a qualified lawyer within the meaning of Article 27 (b), Uniform Code of Military Justice, 10 USC § 827. See Article 38(b), Code supra, 10 USC § 838. He was informed that Captain Griffis was unavailable to act in the requested capacity as he was "serving as Head Trial Counsel in the Office of the Staff Judge Advocate." Instead, Captain Williamson, also a certified lawyer, was made available to act as Prater's defense counsel. The court-martial order, under which the accused was tried, reflects that Captain Griffis and First Lieutenant Mastaglio were appointed as trial counsel and that Captains Williamson, Cole, and Second Lieutenant John J. Reilly, all being members of the United States Marine Corps Reserve, were appointed as defense counsel. All were certified in accordance with Article 27(b), Code, supra.

On the day of trial, the court-martial order was amended and "Captain" (?) John J. Reilly, was "appointed as Trial Counsel in lieu of Defense Counsel." Captain Cherry, United States Marine Corps Reserve, a certified lawyer, was appointed defense counsel. The record of trial reflects that in addition to the law officer and court members, *Second Lieutenant* Reilly, trial counsel, and Captain Williamson, defense counsel, were present. Absent were Captain Griffis and First Lieutenant Mastaglio, both of whom *"were included in the appointing order solely for administrative expediency and have been expressly excused by the convening authority."* (Emphasis supplied.) Also absent were Captains Cole and Cherry, who had also been *"included in the appointing order solely for administrative expediency and have been expressly excused by the accused and convening authority."* (Emphasis supplied.)

At the outset of the trial, trial counsel (Second Lieutenant Reilly) announced, "[n]o member of the prosecution has not [?] acted as investigating officer, law officer, court member, or as a member of the defense in this case or as counsel for the accused in a pretrial investigation or other proceedings involving the same general matter." When he inquired as to who would defend the accused, defense counsel announced that "[t]he accused will be defended by Captain Ronald WILLIAMSON, United States Marine Corps Reserve."

Appellate defense counsel contends that the accused was prejudiced by failure of the law officer to make any inquiry into the accused's understanding of his right to counsel as provided in Article 38(b), Code, supra.

The record is devoid of any indication that the accused was aware of this right. In United States v Donohew, 18 USCMA 149, 150, 39 CMR 149 (1969), we accepted as *minimal compliance* with paragraph 46*d*, Manual for

**345**

Courts-Martial, United States, 1951, an affirmative response by defense counsel in reply to trial counsel's query as to whether " 'the accused [had] been informed of his rights concerning counsel as set forth in Article 38b, UCMJ.' " Here there was not even this *pro forma* inquiry. In such circumstances, I do not believe it can be said that he was properly informed, especially in light of the fact that it had just been announced that his previously requested counsel was not to try this case *and was, apparently, then available to act in the capacity of defense counsel if the accused so desired.*

Disregarding the crude attempt to make requested counsel unavailable to an accused, by the simple maneuver of *assigning him as trial counsel "for administrative expediency"* (emphasis supplied) (cf. United States v Collier, 20 USCMA 261, 43 CMR 101 (1971)), I am certain that had the law officer been made aware of the accused's prior request for Captain Griffis, he would have demanded to know why he was not then available. The lack of an inquiry as to the accused's knowledge of his right to counsel concealed this fact from the law officer and, in my opinion, operated to the prejudice of the accused. See generally, United States v Donohew, supra; United States v Cutting, 14 USCMA 347, 34 CMR 127 (1964); United States v Tellier, 13 USCMA 323, 32 CMR 323 (1962). The requirements of *Donohew*, while not applicable here because this case was tried before *Donohew*, are made more meaningful by the facts of this case.

Of even more concern, however, is the manner in which a member of the defense team, Lieutenant Reilly (United States v Tavolilla, 17 USCMA 395, 38 CMR 193 (1968); United States v Koren, 17 USCMA 513, 38 CMR 311 (1968)), *was removed therefrom on the day of trial and appointed as trial counsel, without any indication that the accused had consented to such activity.* Paragraph 46c, Manual for Courts-Martial, United States, 1969; United States v Tavolilla, supra. It can hardly be contended that Lieutenant Reilly was appointed as defense counsel "solely for administrative expediency" and thus there was no need for the accused to consent to his not serving in that capacity. Captains Cole and Cherry were also so appointed and the accused's consent for their absence was obtained, as reflected in the record.

As a member of the defense team, Lieutenant Reilly is presumed to have acted as such. Paragraph 6a, Manual, 1969, supra. Article 27(a), Code, supra, directs that a person who has acted for the defense shall not "act later in the same case for the prosecution." United States v Collier, supra. See also United States v Green, 5 USCMA 610, 18 CMR 234 (1955). While Lieutenant Reilly's declaration at trial that he had not acted as a member of the defense would ordinarily serve to overcome this disqualification, it does not, in a case such as this, relieve him from his responsibility as a member of the defense team without the express consent of the accused. *This is the holding of Tavolilla and Koren. In my opinion, Lieutenant Reilly was clearly disqualified from participating in this case as trial counsel.* The error was prejudicial to the substantial rights of the accused.

Lastly, while not raised by appellate defense counsel, it appears not unlikely that the accused, while incarcerated in the United States Naval Disciplinary Command, Portsmouth, New Hampshire, was treated as a sentenced prisoner. Why else was he transferred there prior to review by the convening authority and at whose direction? If this be the case, such treatment was unlawful. Reed v Ohman, 19 USCMA 110, 41 CMR 110 (1969); United States v Moore, supra. Only an accused whose sentence to confinement has been ordered executed by the convening authority may be treated as a sentenced prisoner. Reed v Ohman, supra.

Since I find prejudicial error in this case, along with the unexplained delay in the review by the convening authority, I would reverse the decision of the Court of Military Review and order the Charges and their specifications dismissed.