UNITED STATES, Appellee

v

CECIL D. JORDAN, Lance Corporal,
U. S. Marine Corps, Appellant

20 USCMA 614, 44 CMR 44

No. 23,736

June 22, 1971

 

*Lieutenant Kenneth N. Beth,* JAGC, USNR, argued the cause for Appellant, Accused. With him on the brief was *Captain Paul A. Reichs,* USMCR.

*Lieutenant James B. Ginty,* JAGC, USNR, argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Charles J. Keever,* USMC, and *Commander Michael F. Fasanaro, Jr.,* JAGC, USN.

## Opinion of the Court

DARDEN, Judge:

A special court-martial consisting of a military judge alone convicted the appellant of assault with force likely to produce grievous bodily harm, burglary, and assault with intent to commit rape. Earlier appellate review affirmed only convictions of assault and battery and unlawful entry.

At the trial, the prosecution used the appellant's pretrial statement to impeach him while he was testifying before findings. He had made the pretrial statement after having been warned in compliance with Article 31, Uniform Code of Military Justice, 10 USC § 831, but without his having been notified of his right to counsel promulgated by this Court in United States v Tempia, 16 USCMA 629, 37 CMR 249 (1967). If he made the statement during the custodial interrogation, the issue is whether this Court's decision

in United States v Lincoln, 17 USCMA 330, 38 CMR 128 (1967), has continuing validity after the decision by the Supreme Court in Harris v New York, 401 US 222, 28 L Ed 2d 1, 91 S Ct 643 (1971).

After completion of the Government's case, Jordan was called to the witness stand by his own counsel. When asked on direct examination whether he had been at the victim's home at 227-Banchi Aza-Kin, Kin-Son, Okinawa, on October 29, 1969, Jordan replied, "No I wasn't." He was asked during cross-examination if he had had "Battalion Office Hours for this offense"; whether Lieutenant Colonel Harris, the battalion commander, had warned him of his rights under Article 31; and if he had voluntarily given a statement after the warning. In each instance, Jordan answered in the affirmative. When questioned about what he had told his

**615**

battalion commander, Jordan replied, "I told him that I was there." He admitted having lied earlier on direct examination "Because I got shook up." Jordan went on to explain that on the night in question he was "out getting drunk" and mistook the victim's residence for a house of prostitution.

His counsel now maintain that Jordan was improperly cross-examined regarding his prior out-of-court statement, since the Government did not demonstrate in compliance with Miranda v Arizona, 384 US 436, 16 L Ed 2d 694, 86 S Ct 1602 (1966), and United States v Tempia, supra, that the appellant was also first warned of his right to counsel before Lieutenant Colonel Harris questioned him.

Miranda and Tempia are apposite only if Jordan made a statement during a custodial interrogation. ■ Such a determination depends not on whether he technically was in custody but on whether he was "otherwise deprived of his freedom of action in any significant way." Miranda, supra, at page 444.

In Tempia, the accused was summoned to the Office of Special Investigations for interrogation. Noting that if he had not obeyed he would have been liable for prosecution, this Court concluded that he had been significantly deprived of his freedom of action within the meaning of those words in Miranda.

At the time Jordan gave the statement that was used to impeach him, he was the prime suspect, if ■ not the only one. Other indications that the interrogation was custodial include the battalion commander's having read to him the charges on which he was later tried and the commander's having given him an Article 31 warning. Like Tempia, Jordan could not have disregarded the call to battalion office hours without hazarding himself, and he hardly could have left the commander's office with impunity until he was dismissed. The Court of Military Review conceded that Jordan's appearance at office hours "could be termed custodial in the sense that he had little practical choice but to be there." They reasoned, however, that "there is not only no evidence of an interrogation but every reason to believe, from the accused's testimony, that he was not interrogated." On this basis the Court of Military Review concluded that Jordan had not been subject to a custodial interrogation, citing United States v Vogel, 18 USCMA 160, 39 CMR 160 (1969). In that case, Vogel realized, after a midday break in questioning about an offense, that he would be subjected to further interrogation and decided to volunteer details of his participation. Since a majority of this Court was satisfied that Vogel had initiated the interrogation, we were unpersuaded by contentions of his counsel that the warnings he received were imperfect.

The record on this point shows only that the battalion commander read the charges and warned Jordan of his Article 31 rights. We are unable to determine from it whether the appellant was interrogated and if so the extent and type of interrogation. Consequently Jordan's answer that his admission to having been at the scene of the offense was voluntary is a conclusion that cannot be supported by information from the record. That an interrogation did not take place is also speculation. If circumstances exist that make Miranda and Tempia requirements inapplicable, the Government has the responsibility of establishing these circumstances just as it also has the burden of showing compliance with Miranda and Tempia when the requirements of those cases are applicable. For this reason we hold that Jordan was in a coercive situation for Miranda and Tempia purposes and that he should have been informed of his right to counsel.

We do not hold that a member of the armed forces who is questioned by a superior in rank is subjected to custodial interrogation solely because the questioning is conducted by a superior. And a member of the armed forces is not in custody solely as a result of his

status. Each case must be examined for indicia of a more significant deprivation of freedom than status as a member of the armed forces or questioning by a superior in rank. But questioning by a commanding officer or military police or investigators at which the accused is given an Article 31 warning strongly suggests that an accused is also entitled to a right to counsel warning under *Miranda* and *Tempia*.

In United States v Lincoln, supra, the Government used for impeachment during the findings part of the trial a statement the accused made during a custodial interrogation. This Court reversed the conviction, as the Government had not shown the accused had been informed of his rights to counsel and to remain silent.

*Harris* held, however, that the statement of a defendant, otherwise inadmissible on the merits, may be used to impeach the credibility of his trial testimony "provided of course that the trustworthiness of the evidence satisfies legal standards." Harris v New York, supra, at page 4. "The shield provided by Miranda cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances." *Id.*, at page 5. Cf. United States v Caiola, 18 USCMA 336, 40 CMR 48 (1969).

The Supreme Court's decision in *Harris* would determine the issue if it turned solely on the constitutional construction. But we must also consider paragraphs 153*b*(2)(*c*) and 140*a*(2), Manual for Courts-Martial, United States, 1969 (Revised edition). The first of these provides that inconsistent statements of an accused, made during the course of an investigation or another trial, are admissible for impeachment purposes if they were not:

"... [O]btained from him in violation of Article 31 *or any of the warning requirements in 140(a)(2)* or through the use of coercion, unlawful influence, or unlawful in-

ducement. See Article 31(d)." [Emphasis supplied.]

Paragraph 140*a*(2), in pertinent part, provides:

"A statement is obtained in violation of the warning requirements as to the right to counsel if a person of the types described in the above paragraph obtained it by official interrogation from an accused or suspect when he was in custody without having, before any questioning, warned him of his right to consult, and to have with him at the interrogation, civilian counsel provided by him (or, when entitled thereto, civilian counsel provided for him) or, if the interrogation is a United States military interrogation, military counsel assigned to his case for the purpose. Even if such a warning and the warning of the right to remain silent were given, a statement obtained at the interrogation from the accused or suspect without the presence of counsel may be regarded as not being the product of unlawful influence, and as being voluntary, only if it is affirmatively shown that with respect to the statement the accused or suspect freely, knowingly, and intelligently waived his right to the assistance of counsel and to remain silent."

The Manual requirements quoted above have the force of law under a congressional delegation of power to the President to implement the Uniform Code (United States v Smith, 13 USCMA 105, 32 CMR 105 (1962)), and remain effective until a statute or an executive order changes them. *Harris* provides authority for a change, but until they are changed the Manual provisions control.

Because Manual warning standards were not met, use of *Jordan's* incriminating pretrial statements for impeachment was prejudicially improper. United States v Lincoln, supra. Accordingly, we reverse the decision of the Court of Military Review and return the record of trial to the Judge

**617**

Advocate General of the Navy. A rehearing may be ordered.

Senior Judge FERGUSON concurs.

QUINN, Chief Judge (dissenting):

I perceive no justification for perpetuating an erroneous interpretation of the consequences of Miranda v Arizona, 384 US 436, 16 L Ed 2d 694, 86 S Ct 1602 (1966). The draft notes on the changes in paragraphs 140a(2) and 153b(2)(c) of the Manual, which were prompted by Miranda and its judicial progeny, convince me that the changes were not intended to promulgate a separate procedure rule for military courts, but to set out supposed constitutional requirements, as defined in Miranda. See Analysis of Contents, Manual for Courts-Martial, United States, 1969, paragraph 140a(2). Since the Manual provisions were not intended as writ, but merely interpretation, I would not attribute to them the force of law, and I would follow the constitutional rule announced by the Supreme Court of the United States in Harris v New York, 401 US 222, 28 L Ed 2d 1, 91 S Ct 643 (1971), which clarifies the real meaning of Miranda on the issue presented by the accused.

On the authority of Harris, I would affirm the decision of the United States Navy Court of Military Review.