UNITED STATES, Appellee

v

RICHARD STUART BLOOMER, Seaman,
U. S. Naval Reserve, Appellant

21 USCMA 28, 44 CMR 82

*Lieutenant Arthur H. Rainey*, JAGC, USNR, argued the cause for Appellant, Accused.

*Captain John P. Proctor*, USMCR, argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Charles J. Keever*, USMC, and *Commander Michael F. Fasanaro, Jr.*, JAGC, USN.

## Opinion of the Court

FERGUSON, Senior Judge:

The issue before us in this case is whether Captain Booker, the accused's commanding officer, was an accuser and was, therefore, disqualified from convening a court-martial to try this offense.

The record reflects that when the accused submitted a request for discharge as a conscientious objector, Captain Booker released him from combat training and assigned him to duty in the maintenance department of the Naval Inshore Operations Training Center (NIOTC), Mare Island, California. Navy regulations required that pending action on the request, the applicant, to the extent practicable, be employed in duties which involved the minimum conflict with his asserted beliefs. The accused's duties in the maintenance department consisted of rejoining fiberglass hulls of the river patrol boats that the command used for combat training.

After performing these duties for some six weeks, the accused informed his chief that his work in the maintenance department was in extreme conflict with his conscience and requested a transfer to other work. Later that same day he repeated his request to Warrant Officer Mathiasen, the officer-in-charge of the maintenance department. That officer arranged for an interview with a Lieutenant Commander Vasser, who in turn arranged for the accused to appear before Captain Booker at request mast. At the mast, the accused explained his consternation that resulted from the direct support his maintenance duties contributed to armed hostilities, and requested that he be transferred to duties less directly connected with armed warfare. Captain Booker denied the accused's request and ordered him to continue performing his duties in the maintenance department. The accused complied and in the following weeks drafted a letter to Captain Booker asking him to reconsider his decision. In that letter, the accused listed a number of duties he felt he could in good conscience perform. In addition, he wrote:

". . . I realize, of course, that there are other duties that would be in minimum conflict with my beliefs and I am eager to find them out.

"For me to be employed in duties which would involve the minimum conflict with my beliefs would necessitate my removal from this command. This apparently is not practical at the present time. Therefore I realize that for the time being I must remain under the command of

NIOTC. I am willing to remain employed by this command in duties which come nearest to the minimum conflict with my beliefs until such time as my removal becomes practical."

On the morning of December 15th, the accused presented the letter to Warrant Officer Mathiasen and asked him to forward it to Captain Booker. The accused explained the contents of the letter to Mathiasen and that officer also read the first few paragraphs of the document. Warrant Officer Mathiasen then told the accused, " 'I order you to continue your assigned duties in fiberglass repair.' " The accused declined to do so. The following day, the accused was assigned duty as a barracks attendant and, on the same day, a specification alleging the willful disobedience of Chief Warrant Officer Mathiasen's order, in violation of Article 90, Uniform Code of Military Justice, 10 USC § 890, was preferred against the accused. The charge and specification were referred to trial before a special court-martial on December 17th by Captain Booker. At trial, the accused was convicted, despite his plea of not guilty, and sentenced to a bad-conduct discharge, forfeiture of $82.00 per month for six months, and reduction to the grade of E-1. Captain Booker, as convening authority, approved the findings and sentence.

At the outset, we hasten to point out that we are not concerned with the legality of the order given by Warrant Officer Mathiasen; only with the question of whether Captain Booker was so closely connected with the offense that he was disqualified from acting as the convening authority.

Article 23(a), Code, supra, 10 USC § 823, identifies those commanding officers who may convene special courts-martial and, in section (b), provides:

"If any such officer is an accuser, the court shall be convened by superior competent authority, and may in any case be convened by such authority if considered advisable by him."

In Article 1(9), Code, supra, 10 USC § 801, an accuser is defined as,

". . . a person who signs and swears to charges, any person who directs that charges nominally be signed and sworn to by another and *any other person who has an interest other than an official interest in the prosecution of the accused."* [Emphasis supplied.]

Paragraph 5a(3), Manual for Courts-Martial, United States, 1969 (Revised edition), contains the following language:

"It is *unlawful* for a commanding officer who is an accuser to convene a general court-martial for the trial of the person so accused." [Emphasis supplied.]

This provision of the Manual (United States v Smith, 13 USCMA 105, 32 CMR 105 (1962); United States v Jordan, 20 USCMA 614, 44 CMR 44 (1971)) applies with equal force to special courts-martial. See paragraph 5b(2), Manual, supra, which incorporates the above by reference and specifically calls attention to "Article 23(b) as to accusers."

United States v Gordon, 1 USCMA 255, 2 CMR 161 (1952), was the first case in which this Court was confronted with the question of whether a convening authority, who had not sworn to the charges or directed another to sign and swear to them, was nevertheless an accuser. In *Gordon*, the court was convened by order of General Lee. Gordon was initially charged with the burglary of the home of General Edwards and the attempted burglary of General Lee's home. When General Lee referred the case to trial, however, the specification alleging the attempted burglary of his residence had been deleted upon the recommendation of the staff judge advocate. The latter believed that there was insufficient evidence to sustain the accused's pretrial confession to this offense. In holding that, under the circumstances of that case, General Lee was an *accuser* and disqualified to convene the court, we said, at page 261:

". . . [W]e do not believe the true test is the animus of the con-

30

vening authority. . . . [A]s we view it, the test should be whether the appointing authority was so closely connected to the offense that a reasonable person would conclude that he had a personal interest in the matter."

In United States v Marsh, 3 USCMA 48, 11 CMR 48 (1953), the accused was convicted of two offenses—absence without leave and willful disobedience of a lawful command from Captain Sikes. The convening authority was Lieutenant General Hodge.

Marsh, who was on special orders to proceed to Fort Lawton, Washington, for overseas shipment, turned himself in at Fort McPherson, Georgia, stating that he lacked sufficient funds to proceed. The commanding officer at Fort Lawton was apprised of the accused's location and he requested that Marsh be issued orders to proceed to Fort Lawton. Headquarters Fort McPherson issued a *special order* directing that accused proceed to Fort Lawton and that the Transportation Corps furnish the necessary transportation. This was the usual travel order and it directed that costs be charged against the accused. In addition, and pursuant to a standing operating procedure promulgated by Lieutenant General Hodge and adopted by the Third Army to deal with absentees, Captain Sikes, the confinement officer, called the accused before him and read him a letter-order which was captioned a *direct order*. Both the *special order* and the *direct order* were issued by *command* of Lieutenant General Hodge. The first was signed by an adjutant general officer and the second was signed by Captain Sikes. The latter order repeated the body of the former but also contained a statement that failure to obey would subject the accused to a court-martial. Captain Sikes also read to the accused the provisions of Article 90, Code, supra. Marsh said he understood and acknowledged receipt of the order. The accused failed to report to Fort Lawton and was apprehended at his home.

Defense counsel at Marsh's trial unsuccessfully argued that the *direct order* Marsh disobeyed was that of Lieutenant General Hodge and not that of Captain Sikes and that there was, therefore, a fatal variance between the pleading and the proof (Prosecution Exhibit 1, the disputed direct order). When the issue came before us, we agreed with the contention of defense counsel and held that the evidence offered by the Government did not prove the commission of the alleged offense. Having determined the accused had violated General Hodge's order, we went on to hold that because of his interest in the matter he was precluded from convening the court which tried the accused. Article 22(b), Code, supra, 10 USC 822; United States v Gordon, supra. This holding extended also to the absence without leave offense for, as we stated, at page 53:

". . . Congress concluded the probability of harm to an accused was sufficient to deny to an accuser the right to convene a court and if he elects to join specifications for trial all must fall as the court is disqualified to try any. The Manual aptly states the principle in the following language: 'It is unlawful for an accuser to convene a general court-martial for *the trial* of a person so accused.' (Emphasis supplied.)"

Cf. United States v Keith, 3 USCMA 579, 13 CMR 135 (1953).

In the case at bar, Captain Booker had the same *official interest* in the order given the accused by Chief Warrant Officer Mathiasen as that of any commanding officer. This interest, obviously, was not disqualifying. However, because of his previous order, given at the request mast, that the accused continue to perform his duties in the maintenance department, despite the latter's contention as to conscience, he was, to some extent, *personally interested* in seeing that the order was carried out. Were this all, we might be inclined to hold that Captain Booker was not an accuser within the meaning of Article 1(9), Code, supra. There is more.

Captain Booker, on December 17, 1969, referred the charge to trial before

a special court-martial appointed by his order, "serial 2287 of 16 ██ October 1969." That court, as then constituted, was not empowered to adjudge a punitive discharge since it consisted only of members, without a military judge and nonlawyer-counsel. Article 19, Code, supra, 10 USC § 819. On December 30th, the day on which a copy of the charge was served on the accused, Captain Booker ordered a change in the membership of the court "For the special court-martial trial of Seaman Richard S. BLOOMER, USNR, B19 92 46 only." He excused one of the members, appointed three military judges, "any of whom may serve as the Military Judge in the trial of Seaman Richard S. BLOOMER, USNR," and assigned as trial and defense counsel officers certified in accordance with Article 27(b), Code, supra, 10 USC § 827. The previously designated nonlawyer-counsel were appointed as assistants to the newly named lawyers. For the trial of this accused alone, the special court-martial, to which the charge was referred by Captain Booker, could and did adjudge a punitive discharge. Under these circumstances, what we said in *Gordon* is equally applicable here:

". . . We can not peer into the mind of a convening authority to determine his mental condition, but we can determine from the facts whether there is a reasonable probability that his being the victim of an offense tended to influence a delicate selection. We are convinced that in this case it is reasonable to assume that tendency present. Convening officers should remember that there are easy and adequate means to have a court appointed by one entirely divorced from the offense and if there is any doubt about the propriety of the selection it should be resolved in favor of the accused." [*Ibid.*, at page 261.]

Accordingly, we hold that, in our opinion, the evidence of record reflects Captain Booker was "so closely connected to the offense that a reasonable person would conclude that he had a personal interest in the matter." United States v Gordon, supra, at page 261. He was, therefore, an accuser within the meaning of Article 23(a), Code, supra, and disqualified to act as the convening authority. United States v Gordon, United States v Marsh, and paragraph 5a(3), Manual, all supra.

The decision of the Court of Military Review is reversed. The record of trial is returned to the Judge Advocate General of the Navy. A rehearing may be ordered.

Chief Judge Darden and Judge Quinn concur.