UNITED STATES, Appellee

v

ANDREW R. CLARK, Private, U. S. Marine Corps, Appellant

No. 27,015

December 28, 1973

Captain D. A. Higley, USMC, argued the cause for Appellant, Accused.

Lieutenant Mark D. Wigder, JAGC, USNR, argued the cause for Appellee, United States. With him on the brief were Lieutenant Colonel G. L. Bailey, USMC, and Lieutenant Colonel L. K. O'Drudy, Jr., USMC.

## OPINION OF THE COURT

DARDEN, Chief Judge:

In this case, the defense contends that the accused's incriminating pretrial statement was erroneously admitted into evidence and that the appellate delay in the case warrants dismissal of the charges.

Appellate defense counsel argue that the pretrial statement was improperly admitted in evidence because the agent who interrogated the accused improperly advised him of his right to counsel. This contention is premised on the agent's testimony that, among other things, he advised the accused "that if he could not afford a legal counsel, the military would provide one for him." This argument continues that, under the provisions of paragraph 140a(2) of the Manual for Courts-Martial, United States, 1969 (Rev.), and this Court's decision in United States v Tempia, 16 USCMA 629, 37 CMR 249 (1967), it was incorrect for the agent to advise the accused that his right to appointed counsel was conditioned on his indigency. We disagree.

In Tempia, this Court did no more than to adopt the warning requirements as to counsel set out by the Supreme Court in Miranda v Arizona, 384 US 436 (1966). The right to appointed counsel prescribed as a part of the Miranda warning is indisputably conditioned upon the accused's inability to retain private counsel. Miranda v Arizona, supra at 472; United States v Tempia, supra at 637, 37 CMR at 257. The defense nonetheless argue that the Manual, by omitting any mention of indigency, has adopted a stricter warning requirement than that set forth in Miranda and Tempia. We held to the contrary in United States v Clayborne, 22 USCMA 387, 389, 47 CMR 239, 241 (1973), in which we stated that paragraph 140a(2), MCM was

intended to adopt the "result of the decision in Miranda." Department of the Army Pamphlet No. 27-2, Analysis of Contents, Manual for Courts-Martial, United States, 1969, Revised Edition, at 27-8. Nothing in the Manual's

language or in its background analysis indicates that the drafters intended to impose warning requirements beyond those stated in *Miranda* and adopted by this Court in *Tempia.*

We consider *Tempia* and *Clayborne* dispositive of the issue. While we are not unsympathetic to the concept of providing military accused with appointed counsel at their interrogations without consideration of their financial ability, the decision is one for the Congress or the drafters of the Manual and not one that this Court should make.

■ The defense also contends that the extended appellate delay in this case is cause for reversal and dismissal of the charges. But in light of our holding as to the issue regarding the accused's pretrial statement, the record is free from error. There is no wrong to be righted, and the delay alone is insufficient to require that the charges be dismissed. United States v Timmons, 22 USCMA 226, 46 CMR 226 (1973); United States v Prater, 20 USCMA 339, 43 CMR 179 (1971).

The decision of the United States Navy Court of Military Review is affirmed.

Judge QUINN concurs.

DUNCAN, Judge (dissenting):

After a lawful apprehension, the appellant was searched. He possessed amphetamines. During a subsequent interrogation conducted by Sergeant Baker, appellant made the incriminating statement which was later submitted into evidence. Prior to this interrogation, Sergeant Baker warned Clark as follows:

A. . . . I advised Private CLARK that he was under suspicion for possession of dangerous drugs and narcotics; and I advised him of his rights under Article 31.

Q. [Trial counsel]. And what rights were those?
A. That he had the right to remain silent, and that any statement that he may make would be used against him at a trial before a court-martial; and that he had the right to legal counsel during the questioning; and that if he *could not afford a legal counsel, the military would provide one for him;*

and that if he wanted a civilian lawyer he would have to retain him on his own; and that he did have the right to terminate or stop the interview at any time. (Emphasis added.)

Constitutional standards, codal and Manual provisions, prior decisions of this Court, and the facts of the instant case join to present a most interesting issue for determination.

Paragraph 140*a*(2), Manual for Courts-Martial, United States, 1969 (Rev.), provides, in part, as follows:

A statement is obtained in violation of the warning requirements as to the right to counsel if a person of the types described in the above paragraph obtained it by official interrogation from an accused or suspect when he was in custody without having, before any questioning, warned him of his right to consult, and to have with him at the interrogation, civilian counsel provided by him (or, when entitled thereto, civilian counsel provided for him) or, *if the interrogation is a United States military interrogation, military counsel assigned to his case for the purpose.* (Emphasis added.)

The first inquiry is whether the warning given by Sergeant Baker satisfied the standards of paragraph 140*a*(2). If the warning is adequate, appellant's claim is without merit. While I believe that the warning complies with the requirements of Miranda v Arizona, 384 US 436 (1966), even though it did not specifically inform the appellant that appointed military counsel would be provided for him for the interrogation if he desired, case law, read carefully, reveals somewhat differing warning requirements.

In United States v Tempia, 16 USCMA 629, 631, 37 CMR 249, 251 (1967), we held that "the principles enunciated by the Supreme Court in Miranda v Arizona, 384 US 436, 16 L Ed 2d 694, 86 S Ct 1602 (1966), apply to military interrogations of criminal suspects." In fact, it is noted in *Tempia* that "the views of 'the Supreme Court of the United States on constitutional issues' are binding on us." *Id.* at 635, 37 CMR at 255. We further stated in *Tempia,* as follows:

Miranda v Arizona, supra, explicitly

and at length lays down concrete rules which are to govern all criminal interrogations by Federal or State authorities, military or civilian, if resulting statements are to be used in trials commencing on and after June 13, 1966.

*Id.* at 635, 37 CMR at 255.

In United States v Hardy, 17 USCMA 100, 101, 37 CMR 364, 365 (1967), this Court stated:

Our recent decision in United States v Tempia . . . pointed out that the procedural safeguards formulated by the Supreme Court in the *Miranda* case are "constitutional in nature" and, as such, are applicable to courts-martial. As a result, military law enforcement officers must, among other things, inform a suspect or accused before questioning him that he has a right to counsel at the interrogation, *and if he cannot afford a lawyer one will be appointed to represent him.* (Emphasis added.)

Other cases also indicate an indigency qualification. United States v Mewborn, 17 USCMA 431, 38 CMR 229 (1968); United States v Stanley, 17 USCMA 384, 38 CMR 182 (1968). In all those cases, the Court spoke of the *Miranda* requirements and did not discuss paragraph 140*a*(2).

In United States v Bosley, 17 USCMA 350, 38 CMR 148 (1968), the accused was advised of his right to remain silent and the right to talk with a lawyer. He was not informed *he had a right to appointed counsel* during interrogation. Ruling the statement taken from the accused inadmissible, the Court cited United States v Hardy, supra, and United States v Tempia, supra.

The warnings were viewed inadequate in United States v Pearson, 17 USCMA 204, 37 CMR 468 (1967), in that the accused was informed that he was entitled either to " 'legal assistance' " from the staff judge advocate's office or to representation by civilian counsel at his own expense. He was not told *"that a 'military lawyer would be provided free of charge,' "* nor was he told "that counsel might be present during the interrogation" (emphasis added). *Id.*

Prejudicial error was noted in United States v Wood, 17 USCMA 257, 38 CMR 55 (1967), when prior to interrogation an accused was not advised that he was entitled to *appointed military counsel.* The last three cases cited, all unanimous opinions, mandate warnings broader than the *Miranda* rule, and yet they do not discuss paragraph 140*a*(2).

Government counsel remind us that in United States v Clayborne, 22 USCMA 387, 389, 47 CMR 239, 241 (1973), we concluded "that the Court of Military Review erred in holding that the accused's warning of a right to consult with counsel was an indispensable requirement separate and distinct from his right to the presence of counsel." The dicta in that case went on to express that paragraph 140*a*(2) regarding the right to consult counsel and to have present at interrogation "retained or appointed counsel" was intended to adopt the *Miranda* result, and not to impose warning requirements of a constitutional nature beyond those stated in *Miranda* and adopted by this Court in *Tempia. Id.* at 389, 37 CMR at 241. I did not understand that we held in *Clayborne* that paragraph 140*a*(2) was also unenforceable with respect to other matters of a nonconstitutional nature beyond *Miranda.* For instance, that paragraph provides that to be admissible a confession or admission of the accused must be voluntary, and that

[s]ome instances of coercion, unlawful influence, and unlawful inducement in obtaining a confession or admission are:

. . . . .

Obtaining the statement in violation of Article 31(b) or other warning requirements in this subparagraph (140*a*(2)) as to the right to remain silent.

Obtaining the statement in violation of the warning requirements in this subparagraph (140*a*(2)) as to the right to counsel.

This Manual section further provides:

A statement of an accused or suspect obtained from him in violation of any of the above warning requirements as to the right to remain silent

or the right to counsel is considered to be involuntary, and therefore inadmissable against him, because of the violation alone, even if the accused or suspect knew that he had these rights despite' the lack of warning. These warning requirements do not apply to the questioning of witnesses at a trial.

In *Miranda,* the Supreme Court made certain warnings necessary before the fruits of custodial interrogation can be admitted in evidence. That Court did not, as the Manual provision does, designate the confession or admission involuntary for a failure of the warning requirements. Thus, I view the Manual provision more far reaching than the constitutional boundary of *Miranda.*[1]

The view that all requirements of paragraph 140*a*(2) are only descriptive of *Miranda* would render the language, "or, if the interrogation is a United States military interrogation, military counsel assigned to his case for the purpose" surplusage. I view the use of such language advertent and well-advised. It accounts for a military concern that was not even slightly considered in *Miranda;* that is, the fact that there are counsel provided for interrogees in the military without regard to any financial consideration. The paragraph provides for apprisement of the free availability of counsel. Without this added element of the warning, the regular *Miranda* warning has the great potential to mislead a service member to believe that he may have free military counsel only if he proves to be indigent. Judge Kilday wrote in United States v Culp, 14 USCMA 199, 202, 33 CMR 411, 414 (1963):

> It would be fallacious to assume that a service member appears before a court-martial in the identical position as a defendant before a civilian court. From Powell v Alabama, 287 US 45, 77 L Ed 158, 53 S Ct 55, 65 (1932), down to, and including, Gideon v Wainwright, 372 US 335, 9 L Ed 2d 799, 83 S Ct 792 (1963), there persists the plight of one charged with crime before civilian courts, who appears alone and without counsel because he is indigent. Contrariwise, no service man appears before a court-martial alone and there are no "indigents" before courts-martial.

Although here we deal with a pretrial statement and not representation before a court-martial as such, there is no concept of indigency at either stage.

Moreover, the nonavailability of civilian counsel in many parts of the world where persons in military service are stationed, furnishes a need for warning requirements different from the *Miranda* warnings. Indeed, it would amount to a misleading charade to inform a person stationed in such an area that he may

---

[1] A majority of this Court decided that the Manual requirements were different than constitutional requirements, but remain applicable. United States v Jordan, 20 USCMA 614, 44 CMR 44 (1971). The Court was faced with determining whether the Supreme Court decision in Harris v New York, 401 US 222 (1971), affected provisions of the Manual. The Court stated:

> The Supreme Court's decision in *Harris* would determine the issue if it turned solely on the constitutional construction. But we must also consider paragraphs 153*b*(2)(c) and 140*a*(2), Manual for Courts-Martial, United States, 1969 (Revised edition). The first of these provides that inconsistent statements of an accused, made during the course of an investigation or another trial, are admissible for impeachment purposes if they were not:
>
> > '. . . [O]btained from him in violation of Article 31 *or any of the warning requirements in 140(a)(2)* or through the use of coercion, or unlawful inducement. See Article 31(d).'
>
> .  .  .  .  .
>
> The Manual requirements quoted above have the force of law under a congressional delegation of power to the President to implement the Uniform Code (United States v Smith, 13 USCMA 105, 32 CMR 105 (1962)), and remain effective until a statute or an executive order changes them. *Harris* provides authority for a change, but until they are changed the Manual provisions control.

United States v Jordan, supra at 617, 44 CMR at 47.

engage a lawyer to represent him at interrogation, when the law enforcement people well know that there are no civilian lawyers reasonably available. The Manual warning requirements provide a sensible and fair procedure for interrogation in the worldwide system of military justice.

The warnings called for by Article 31 and paragraph 140a(2) are far from recondite. The simple fact is that in both the warning requirements are broader than *Miranda,* and to avoid the sting of involuntariness the Government's burden of proof of warning is heavier than the *Miranda* obligation. Article 31 requires the warning to those suspected of crime, while *Miranda* warnings are necessary only at custodial interrogation. Paragraph 140a(2) warnings require unequivocal instruction that military counsel will be assigned, if requested, for the interrogation. We have no function to interpret the plain meaning of the language of the Manual, and the requirements, although somewhat broader than necessary to satisfy the Constitution, surely are not so onerous that they must be removed ·in the interest of public policy.

In United States v Clayborne, supra, we decided that the warning given was in compliance with the *Miranda* standard even though the exact Miranda language was not used. Conversely, in the case we now review, the warning given departs too far from the paragraph 140a(2) requirement for me to conclude that the appellant reasonably should have known that he could have had an appointed military counsel without showing any indigency.

The Manual provision removes the need for inquiry as to the impact the failure to properly warn had upon the appellant. It provides that the failure stamps the confession or admission as involuntary. Under the *Miranda* doctrine, on the other hand, a statement taken without the required warnings may be shown to have been voluntary, yet inadmissible.

Remembering that there was no objection to the offer of the appellant's statement in evidence and that the matter is not a *Miranda*-type constitutional matter, can it be that the failure to object was a waiver of the right to raise the issue upon review? I do not believe that it was. By operation of law the statement is deemed involuntary. Then also keeping in mind the involuntary nature of· the statement, strict compliance with the requirement that one being interrogated be advised of the free availability of counsel is so important to fundamental fairness in this system of justice that the failure to observe the requirement cannot be waived by failure to object. Compliance with the stated requirements of paragraph 140a(2) is necessary to be proved by the Government as a condition of admissibility.

The admissibility of a confession or admission of the accused must be established by an affirmative showing that it was voluntary, unless the defense expressly consents to the omission of such a showing.

Paragraph 140a(2), MCM. The Government has failed to show compliance and remove the badge of involuntariness.

Returning to the case at bar, because the warning was inadequate, the statement taken from appellant is *per se* involuntary, not waived, and inadmissible; therefore, prejudicial error intervened. The Government argues that assuming error, it, in the factual setting of this case, is harmless error.

It is the well-settled rule in this Court that the harmless error doctrine does not apply to pretrial statements not made in compliance with mandatory warning requirements or involuntary confessions or admissions, and that admission of such statements in evidence is reversible error. United States v Kaiser, 19 USCMA 104, 41 CMR 104 (1969); United States v Wilson, 2 USCMA 248, 8 CMR 48 (1953).

The Government urges us to reverse our long-standing rule in *Kaiser* and *Wilson* on the basis of the Supreme Court's decision in Milton v Wainright, 407 US 371 (1972). In *Milton,* the harmless error doctrine was applied to sustain a conviction where a confession, which was erroneously admitted in evidence, was obtained by a police officer posing as an accused person confined in the cell with the indicted petitioner after pe-

titioner had been advised by his counsel not to make further statements. The Supreme Court held that because the jury had heard, in addition to the challenged confession, overwhelming evidence of the petitioner's guilt, including no less than three full confessions that had been made by the petitioner prior to his indictment and other damaging testimony, the admissibility of which was not being questioned by the petitioner, any error in the admission of the confession made to the police officer, even assuming arguendo that the challenged confession should have been excluded, was harmless error beyond a reasonable doubt. *Milton* deals with a fact situation somewhat similar in principle to that in Massiah v United States, 377 US 201 (1964), the dispute concerned a post-indictment matter not involving a custodial interrogation warning deficiency or an involuntary admission. In *Massiah* there was no confession resulting from in-custody interrogation, and in *Milton* the disputed statement was made only after the accused had been initially warned of his rights and represented by counsel.

*Miranda* and paragraph 140*a*(2) primarily focus upon protection for an accused from influences which tend to produce involuntary confessions and admissions in violation primarily of the Fifth Amendment.[2] *Milton* and *Massiah* assume voluntariness since in each case the accused openly and freely made incriminatory statements under circumstances that vouch for reliability. Those cases factually depict cajolery of police tactics in conducting surreptitious interrogations which deny the accused his right to counsel.

Although *Milton* was decided without actually reaching the merits of the petitioner's claim, the Court found the error harmless beyond a reasonable doubt. Certainly *Milton* provides precedent for finding evidence erroneously introduced in controvention of Sixth Amendment rights harmless, but I do not find *Milton* compels the abandonment of the logic of our earlier cases and thus to extend the harmless error doctrine to defective warning cases where *involuntary* confessions or admissions are admitted in evidence. The admission of Clark's statement was prejudicial error.

II

Appellant urges dismissal because of what he asserts as an egregious post-trial delay. Unreasonable and unexplained post-trial delay requires dismissal of the charges where there is prejudicial error in the trial proceedings which could have been cured at a rehearing or purged on appeal but for the delay. United States v Gray, 22 USCMA 443, 445, 47 CMR 484, 486 (1973); United States v Timmons, 22 USCMA 226, 46 CMR 226 (1973).

The case was tried on March 24, 1972, and the convening authority acted August 1. The supervisory authority took action on November 7. The bad-conduct discharge was suspended on November 28. The record was received at the Court of Military Review on December 26.

The Government offers several reasons to explain the delay at the convening authority level, a period of about 127 days. First, a shortage of personnel had the only court reporter involved with the preparation of seven other records of trial. Second, the convening authority took time to weigh the questions of clemency and suspension of the punitive discharge. Finally, the supervisory authority suspended the bad-conduct discharge for a probationary period which contributed to the delay but, as the Government asserts, inured to the benefit of appellant.

The post-trial delay in the preparation and processing of this 32-page record is not sufficiently explained by the Government. Prejudicial error, together with the unreasonable delay, requires dismissal. United States v Gray, supra; United States v Timmons, supra; United States v Prater, 20 USCMA 339, 43 CMR 179 (1971).

I would reverse the decision of the Court of Military Review and dismiss the charges.

---

[2] It is manifest that an involuntary statement is unreliable. Also, in Miranda v Arizona, supra at 469, there was concern over the right to have counsel present during the interrogation since the right is indispensible to the protection of the Fifth Amendment.