**UNITED STATES**

v.

**Michael D. BUSSE, 477 70 5522, Private (E-1), U. S. Marine Corps.**

**NCM 78 0665.**

U. S. Navy Court of Military Review.

Sentence Adjudged 6 Jan. 1978.

Decided 19 Jan. 1979.

---

LT Lawrence W. Muschamp, JAGC, USN, Appellate Defense Counsel.

LT Sander Mednick, JAGC, USNR, Appellate Government Counsel.

Before ROOT, Senior Judge, and GREGORY and GLADIS, JJ.

PER CURIAM:

Pursuant to his pleas before a special court-martial composed of officer members, appellant was convicted of the larceny of 26 cases of beer and wrongful appropriation of an automobile, both offenses in violation of Article 121, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 921.

After assembly of the court-martial and presentation of testimony by the Government's first witness, the presiding military judge was notified of possible command influence upon the members. The military judge thereupon called the informant, a detailed member earlier relieved on a peremptory challenge, to testify, and also heard testimony from two of the four empanelled members. That testimony revealed certain comments made by the convening authority before trial to the senior member at appellant's court-martial, Major N. The convening authority indicated concern over the "appropriateness" of past sentencing. This concern may have prompted his modification of the entire court membership, with the single exception of Major

N. Major N. related the substance of the comments to the other members prior to assembly of appellant's court-martial.[1]

Concluding that there was ". . . the appearance, if not the fact, of impropriety . . ." in the communication by the convening authority, the military judge excused all the members and informed the trial counsel of the need to have new members assigned. (R. 43). Trial and defense counsel specifically interposed no objection to this procedure; indeed, the defense pronounced this course of action to "be the best choice as far as the defense is concerned." *Id.* In acting upon the judge's determination, the convening authority issued a written modification to his convening order, which appointed new members from outside his own command, and the trial of appellant proceeded.

■ On appeal before this Court, appellant assigns a single error: Whether the convening authority was disqualified from convening the court-martial that tried appellant?

We conclude that the convening authority was not disqualified and answer appellant's assignment in the negative.

Appellant argues that the convening authority was an accuser within the language of Article 1(9), UCMJ, 10 U.S.C. § 801(9), and paragraph 5a(4), *Manual for Courts-Martial, United States, 1969* (Revised edition) (MCM), as a ". . . person who has an interest other than an official interest in the prosecution." Appellant proposes that the comments of the convening authority to Major N. constituted a violation of Article 37, UCMJ, 10 U.S.C. § 837, and Paragraph 38, MCM, and since they would then represent an unlawful act, they must, perforce, demonstrate an other than official interest in the case. Appellant's argument apparently would not permit the logical possibility that an official interest may be expressed in an unacceptable or unlawful manner.

■ The trial judge was properly and justifiably of the opinion that the record in this case disclosed the appearance of impropriety by the convening authority. *See* Ar-

1. (Military Judge)
Q. Alright. I received a phone call from you just approximately ten minutes ago indicating that you felt that you should tell me something with regard to composition of this court and I had you tell me. Both trial and defense counsel were present and I informed them informally of what you said to me. What I would like you to do now is again say what you said to me over the phone, under oath in this courtroom. So, go ahead.
(Informant)
A. Very well, sir. As the members of the court were brought together, we were brought to the waiting room. The senior member closed the door and gave us a general briefing of what court-martial procedures are. He outlined to us that the command had, in fact, relieved all the previous members of the court as shown on the convening order and that he was the only quote unquote survivor and that, also, that we had a duty not only to protect the rights of the accused but also to protect the rights of the government and he stated that that had not been adequately taken care of in the past. He did mention an example where he felt that a four month UA conviction resulting in a two to three week restriction punishment was inappropriate and—well, I'm working from memory at that—that was the only example he used. He then went on to relate that we had

been specially chosen for this particular court by our squadrons. I made a crack to him, "Give me a break" and he said, "No, it's true, you've all been screened due to . ." he didn't say "special circumstances" but words to that effect. He also stated very clearly that he did not know anything about this case. He did not know the accused. He didn't even know what squadron he was from. He also stated that we had an obligation to be fair and that when we were in here it was strictly one man—one vote. He also said, "I am not providing any command influence to you." The basis of my phone call is because notwithstanding this disclaimer, I felt that command influence was brought to bear.
Q. Alright, Captain SULLIVAN, did he ever mention the convening authority by name as an attempt to try to influence you that the convening authority expected something from the members of the court?
A. No, sir, he did not.
MJ: Trial counsel, would you care to question this witness?
TC: No, sir. I think Captain SULLIVAN has pretty well articulated his feelings and I think I understand what happened.
MJ: Very well. Defense counsel?
DC: No, Your Honor.

ticle 23(b), UCMJ, 10 U.S.C. § 823(b); paragraphs 5a(3), 5a(4), and 5b(2), MCM. That impropriety extended to comments made to Major N. which related certain views of the convening authority on sentencing practices in general. Major N. disclaimed any knowledge of this case or of knowing the appellant, and specifically made no comment concerning appellant's court-martial. Disqualification of Major N. as a member would have constituted sufficient relief under this circumstance, were it not for the fact that he disclosed the convening authority's comments to the other members of appellant's court-martial. Relieving all the members was, thus, necessitated.

The test applicable to the actions of the convening authority in this case remains that first set forth by the Court of Military Appeals in *United States v. Gordon*, 1 U.S.C.M.A. 255, 2 C.M.R. 161 (1952): ". . . whether the appointing authority was so closely connected to the offense that a reasonable person would conclude that he had a personal interest in the matter." A personal interest was found in *Gordon* because the accused was charged with the attempted burglary of the convening authority's own house, an offense to which the latter obviously attached great personal significance. The Court of Military Appeals found a similar result in the following instances: where the convening authority had a particular interest in the accused and changed the composition of the accused's court-martial, for the trial of that accused only, to give it authority to award a punitive discharge, *United States v. Bloomer*, 21 U.S.C.M.A. 28, 44 C.M.R. 82 (1971); where

the accused was charged *inter alia* with participating in a riot at which the convening authority had been present and was possibly the object of disrespectful language, and who had made personal efforts to quell the disturbance, *Brookins v. Cullins*, 23 U.S.C.M.A. 216, 49 C.M.R. 5 (1974); where the convening authority testified as a witness at the accused's trial regarding the convening authority's own conduct on the issue of a speedy trial, *United States v. Reed*, 2 M.J. 64 (C.M.A.1976); and where the convening authority who approved findings and sentence, but did not convene the court, had been a provost marshal and communicated his anger to an important government witness on the day of the accused's trial, *United States v. Jackson*, 3 M.J. 153 (C.M.A.1977).

In contrast to these cases, there is nothing in the instant record which discloses either personal knowledge by the convening authority of the appellant or of the appellant's offenses, much less a personal interest in the offenses. *United States v. Gilfilen*, 6 M.J. 699 (N.C.M.R.1978); *United States v. Toon*, 48 C.M.R. 139 (A.C.M.R. 1973); *United States v. Rembert*, 47 C.M.R. 755 (A.C.M.R.1973); *United States v. Thomas*, 46 C.M.R. 705 (A.C.M.R.1972); *United States v. Brown*, 45 C.M.R. 911 (N.C.M.R. 1972). Consequently, there was nothing to compel the military judge to pursue independently the development of an accuser issue.

The military judge was very well aware of the possible existence of an accuser issue in this case and gave appellant and his counsel every opportunity to pursue it.[2]

2. (From the session held 7 December 1977). MJ: . . . I don't intend to get into that problem of the accuser concept until we reconvene this court and then I invite defense counsel, if you wish to raise the issue pt, you can most certainly do so, if it becomes necessary to do so, and based on what I have seen so far, I think that the defense counsel could raise the issue. . . . And then, whoever reconvenes this court, if it should happen to be [the same convening authority], and the accuser concept wants to be raised (sic), that is, command influence, I will invite the defense counsel to do so. . . . Any objections to that?

TC: No, Your Honor.
DC: No, Your Honor. (R. 44).
(From the session held 6 January 1978).
MJ: Defense counsel, have you have an opportunity to speak with the convening authority?
DC: Yes, Your Honor, I have.
MJ: And what are your conclusions? First, I would ask you if you feel there is any problem with the jurisdiction of this court?
DC: No, sir, I do not.
MJ: And, secondly, do you feel you want to litigate anything about the accuser concept or command influence?

Counsel for appellant specifically responded: ". . . we feel there is not an accuser problem in this case, nor is there any longer even the appearance of an influence problem." [3] We believe the response of the trial defense counsel is worthy of consideration in our determination that a reasonable person would not impute to the convening authority a personal feeling or interest in this case. *See United States v. Metcalf*, No. 69 2694 (NCMR 30 January 1970).

█ Although under certain circumstances a military judge may have the responsibility to act *sua sponte* in developing any jurisdictional defect, he is not tasked with the responsibility of searching for such a defect when it neither appears from the record before him nor is raised by either party. The obligation to pursue an accuser issue in this case was in appellant and his trial defense counsel, who consciously elected to avoid it.

█ We also conclude that because of the appointment of all new members to the court from a command other than the convening authority's, any issue of unlawful command influence had been negated. Trial defense counsel was apparently of this same opinion.[2, 3] Appellant has waived, properly we think, any objection to this court on the ground of command influence.

Accordingly, appellant's assignment of error is denied. The findings and sentence as approved below are affirmed.

DC: No, sir. I have taken the opportunity to speak with [the convening authority] and also investigated the matters that led up to this as far as what actions he had taken, independent of discussion with [the convening authority], and I have spoken with Private Busse with regard to the matter, and we feel there is not an accuser problem in this case, nor is there any longer even the appearance of an influence problem. So, we have no problem in this case.

MJ: Very well. You feel the jurisdiction of this court has not been affected?

DC: No, sir.

MJ: Private Busse, with regard to this matter, I am sure you are fully aware of what has transpired, because you were in the courtroom, like ourselves. I take it that you have discussed this matter with your defense counsel?

ACC: Yes, Your Honor.

MJ: And do you want to litigate any issues with regard to what has transpired already?

ACC: No, sir. . . .

MJ: I want all of you to rest assured that if you want to litigate the issue—subpoena and have [the convening authority] present for any reason, I will be glad to order that he brought here for your interrogation. In view of the fact that be had the opportunity to speak with [the convening authority], I feel there is no necessity to do so; combined with the fact that we have members from a group other than [the convening authority's], and that we are going to have an opportunity to *voir dire* those members, I really don't see any prejudice that could arise with regard vis-a-vis (sic) the accused in this matter, so I intend to proceed. (R. 47–48).

