UNITED STATES

v.

Colin M. BERRY 545 66 4806 Lieutenant (junior grade) (O-2) U. S. Navy.

NCM 74 2599 *.

U. S. Navy Court of Military Review.

28 July 1975.

LT Gordon S. Wright, JAGC, USNR, Appellate Defense Counsel.

LCDR Harvey E. Little, JAGC, USN, Appellate Government Counsel.

## DECISION

CEDARBURG, Chief Judge:

Pursuant to the provisions of Article 69, UCMJ, 10 U.S.C. § 869, the record of the instant case was forwarded to this Court by the Judge Advocate General for review in accordance with Article 66, UCMJ, on the following issue:

Was the accused prejudiced by the fact that an attorney consulted by him in connection with the instant charges later acted as staff judge advocate to the officer who convened the investigation pursuant to Article 32, U.C.M.J.?

Appellant was tried by general court-martial and pursuant to his pleas of guilty was found guilty of 4 specifications of larceny. Each specification alleged a larceny of $69.30 in currency belonging to the United States arising from receipt of payment for unassigned government quarters. Ten additional specifications of larceny and 14 specifications of fraudulent claims were withdrawn at the direction of the convening authority following the entry of pleas. An additional specification of larceny and an additional specification of a fraudulent claim had previously been dismissed on a motion granted by the military judge.

Incident to processing charges which had been investigated pursuant to Article 32, U.C.M.J., the lawyer assigned to the officer who convened the investigation prepared a letter recommending trial by general court-martial. There was evidence which reflected that this same staff lawyer advised the appellant concerning some of the charges approximately one year earlier. The Article 32 convening officer signed without modification, and forwarded to the general court-martial authority, the recommendation which had been prepared by this staff judge advocate. The propriety of the action of the staff judge advocate in preparing the recommendation and his ancillary involvement are the issues in this case.

At trial, prior to entering his pleas, appellant moved to dismiss all charges and specifications, asserting he had been denied his right to an independent and unbiased recommendation from the Article 32 convening authority.

■ At trial and on appeal appellant contends, and the government assumes for argument, that the staff judge advocate who prepared the recommendation had previously formed an attorney-client relationship with the appellant relating to the fraudulent claims and larcenies alleged and referred to trial in the instant case. We have no hesitancy in finding, from the evidence presented at trial, the existence of such a relationship, despite the disclaimer of the attorney in question. The record of legal assistance, prepared by the attorney, recorded a 30-minute consultation on the "question[ing] by the FBI for possible fraud." While the attorney remembered his action as extending only to the arrangement of an appointment with another lawyer, the appellant's unequivocal testimony supported the written record of a rather lengthy interview and recited a complete and candid disclosure of the events surrounding the pending fraud and larceny charges.

■ "This [attorney-client] privilege—one of the oldest and soundest known to the common law—exists for the purpose of providing a client with assurances that he may disclose all relevant facts to his attorney safe from fear that his confidences will return to haunt him." *United States v. Green*, 5 U.S.C.M.A. 610, 613, 18 C.M.R. 234, 237 (1955), citing *United States v. Marrelli*, 4 U.S.C.M.A. 276, 15 C.M.R. 276 (1954). In *United States v. McCluskey*, 6 U.S.C.M.A.

545, 20 C.M.R. 261 (1955), the Court of Military Appeals stated that ". . . activities in the premises not concerned with the maintenance of that relation must be measured jealously, and with the highest degree of care." Implicit in the privilege is the abstention from taking part in any proceedings contrary to the client's interest and it is immaterial that confidential communications have not been divulged or used. See *United States v. Green, supra* at 615, 18 C.M.R. at 236. Recognizing that attorneys in the military, especially those in their first tours, are often assigned to a variety of jobs, presenting a potential for conflicts of interest, nonetheless, it is the responsibility of the individual attorney to insure that he does not consciously or inadvertently act in conflict with the interests of a client once a relationship has been established. To avoid conscious disloyal acts requires only integrity; to avoid inadvertent or apparently disloyal acts requires acute sensitivity. The slightest suspicion, the very appearance of taking part in any proceedings contrary to the client's interest, directly or indirectly, must be scrupulously avoided. We cannot enjoin too strongly that any doubt must be resolved in favor of the client. In the present case the issue was raised to the Article 32 convening authority by the defense shortly after the recommendation went forward and the relief requested at the time, a new consideration by the Article 32 convening authority uninfluenced by any participation of erstwhile counsel, could have been accomplished expeditiously to remove any specter of impropriety. It should have been and well may have been but for the same attorney's efforts to vindicate himself of any improper prior involvement.

Having concluded that the staff judge advocate of the Article 32 convening authority took part in proceedings contrary to his client's interests, we now determine the effect of his improper participation.

In *Green, McCluskey*, and *Collier*, all *supra*, having found the existence of an attorney-client relationship, the Court of Military Appeals looked for prejudice to determine the appropriate disposition. In *Green*

and *Collier*, they reversed because of the existence of general prejudice. In *McCluskey*, a reversal was dictated by a demonstration of "specific and particularized injury"—specific prejudice. In *Collier*, the Court of Military Appeals confirmed, however, ". . . that the nature and the scope of counsel's inconsistent roles may be so circumscribed as to compellingly demonstrate that neither the accused nor the judicial system has been harmed, either in substance or image. [citations omitted]." *United States v. Collier*, 20 U.S.C.M.A. 261, 263, 43 C.M.R. 101, 103 (1971).

The role of the staff judge advocate in this case was limited to the preparation and ancillary discussion of a recommendation for trial by general court-martial, adopted and signed without change, by the officer who was the Article 32 convening authority but who was not the general court-martial convening authority. The recommended trial by general court-martial was contrary to the pretrial investigating officer's recommendation which had recommended nonjudicial punishment administered by the general court-martial authority for charges for which a prima facie case existed. The investigator had concluded that a prima facie case existed as to specifications 1–14 or Charges II and III. The recommendation prepared by the staff judge advocate and forwarded by the Article 32 convening authority, however, recommended trial on specifications 1–21 of Charges II and III, finding sufficient evidence of probable cause.

There is no evidence that the general court-martial authority or his staff judge advocate were made aware of the dual roles of the subordinate commander's staff judge advocate prior to referral of appellant's case to a general court-martial. Trial on only the charges for which the pretrial investigator had found a prima facie case was recommended by the staff judge advocate of the general court-martial authority. His advice was followed in the referral. Thus, the advice to the general court-martial authority by his staff judge advocate reinstated the conclusion of the pretrial investiga-

tor regarding the specifications for which probable cause existed. He determined to refer those charges to a general court-martial, however, rather than administer nonjudicial punishment. His determination that a general court-martial was the appropriate forum for resolution of charges of a serious nature, here involving an officer, is a decision which is clearly supported by the pretrial investigation.

The staff judge advocate of the Article 32 convening authority, in his preparation of the recommendation, did not act in a prosecutorial role specifically proscribed by Article 27, UCMJ, and paragraph 46, Manual for Courts-Martial, United States, 1969 (Revised edition).

The assigned role of a staff judge advocate in evaluating the proper disposition of charges is an impartial, not adversary one. In the present case, the staff judge advocate's participation was not even necessary to the disposition of charges by the Article 32 convening authority. Most commanders without general court-martial authority do not have lawyers assigned to their staff. The responsibility and prerogative, in respect to disposition of charges, are the commanders'. In the case at bar, the Article 32 convening authority's independent predisposition to recommend a general court-martial against any officer for charges as serious as those here involved, if evidence of probable cause existed, was repeatedly stated in his trial testimony.

■ We reiterate the absolute necessity for an attorney to abstain from taking any part in proceedings contrary to the interest of his client regardless of the purity of his motives. Not only is a conscious disloyalty to the interests of his client to be avoided but also the appearance of engaging in an incompatible role. In the present case, we are constrained to hold, however, that the record compellingly demonstrates that the counsel's role was so circumscribed that neither the appellant nor the judicial system has been harmed, either in substance or image.

■ The adjudged sentence included a partial forfeiture of pay. The sentence therefore lawfully could not, nor did it, include forfeiture of allowances and that portion of the action of the convening authority directing application of the forfeiture to allowances is void and of no legal force or effect.

The findings and sentence as otherwise approved on review below are affirmed.

Judge WRAY and Judge FULTON concur.